**2013-5103**

In The
# United States Court of Appeals
For The Federal Circuit

**MORTON LIFTIN, the Estate of,**
**JOHN LIFTIN, Executor,**

***Plaintiffs – Appellants,***

**v.**

**UNITED STATES,**

***Defendant – Appellee.***

**APPEAL FROM THE UNITED STATES COURT OF FEDERAL CLAIMS IN NO. 10-CV-0589, JUDGE GEORGE W. MILLER.**

## CORRECTED BRIEF OF APPELLANTS

**Jonathan E. Strouse**
**HOLLAND & KNIGHT, LLP**
**131 South Dearborn Street, 30th Floor**
**Chicago, Illinois 60603**
**(312) 263-3600**

***Counsel for Appellants***

THE LEX GROUP[DC] ♦ 1825 K Street, N.W. ♦ Suite 103 ♦ Washington, D.C. 20006
(202) 955-0001 ♦ (800) 856-4419 ♦ Fax: (202) 955-0022 ♦ www.thelexgroup.com

Form 9

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

MORTON LIFTIN, the Estate of, JOHN LIFTIN, Executor v. United States

No. 2013-5103

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party) Appellant certifies the following (use "None" if applicable; use extra sheets if necessary):

1. The full name of every party or amicus represented by me is:

MORTON LIFTIN, the Estate of, JOHN LIFTIN, Executor

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Not applicable.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Not applicable.

4. ☑ The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Jonathan E. Strouse, Holland & Knight, LLP, 131 S. Dearborn, 30th Floor, Chicago, IL 60603

6/24/13
Date

/s Jonathan E. Strouse
Signature of counsel

Jonathan E. Strouse
Printed name of counsel

Please Note: All questions must be answered

cc: ______________________

124

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... iv

STATEMENT OF RELATED CASES .......... vi

STATEMENT OF JURISDICTION .......... 1

STATEMENT OF THE ISSUE .......... 2

STATEMENT OF THE CASE .......... 3

STATEMENT OF FACTS .......... 5

SUMMARY OF THE ARGUMENT .......... 11

ARGUMENT .......... 14

A. Standard of Review .......... 15

B. Summary Judgment Standard .......... 15

C. The Estate had Reasonable Cause for Filing a Late Estate Tax Return Until Mrs. Liftin's Naturalization .......... 16

D. Mr. Dadakis's Advice That The Estate Could Delay Filing Until all Other Ancillary Matters were Complete was Substantive in Nature and a Proper Basis for Finding Reasonable Cause .......... 18

i. Advice is substantive when it concerns an interpretation of tax law .......... 18

ii. Mr. Dadakis's advice was substantive because there was no unambiguous statute underlying his advice and the advice required an interpretation of substantive tax law .......... 20

iii. The case law cited by the Court of Federal Claims is distinguishable from the facts of this case .......... 23

iv The facts of this case are much more similar to those in *Estate of Dipalma v. Comm'r*, 71 T.C. 324 (1978)....................25

E. The Estate's Late-Filed Tax Return was Not the Result of Willful Neglect ..........................................................................26

CONCLUSION ..........................................................................................27

ADDENDUM

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................15, 16

*Estate of Bradley v. Comm'r*,
33 TCM 70 (1974)....................17

*Estate of Campbell v. Comm'r*,
62 T.C.M. (CCH) 1514 (1991)....................26

*Estate of DiPalma v. Comm'r*,
71 T.C. 324 (1978)....................17, 19, 25

*Estate of La Meres v. Comm'r*,
98 T.C. 294 (1992)....................*passim*

*Estate of Rapelje v. Comm'r*,
73 T.C. 82 (1979)....................17

*Estate of Young v. United States*,
No. 11-11829, 2012 WL 6585327 (D. Mass. Dec. 17, 2012)....................23, 24

*Knappe v. United States*,
713 F.3d 1164 (9th 2013)....................19, 20

*Ladd v. United States*,
713 F.3d 648 (Fed. Cir. 2013)....................15

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986).................... 15-16, 22

*Russell v. Comm'r*,
101 T.C.M. (CCH) 1363 (2011)....................23

*Sanderling, Inc. v. Comm'r*,
571 F.2d 174 (3d Cir. 1978)....................17

*Stovall v. United States*,
94 Fed. Cl. 336 (2010) .......... 15

*United States v. Boyle*,
469 U.S. 241 (1985) .......... *passim*

**STATUTES**

26 U.S.C. § 2056(d)(1) .......... 5

26 U.S.C. § 2056(d)(4) .......... 5, 21

26 U.S.C. § 6075(a) .......... 5, 11, 16

26 U.S.C. § 6651(a) .......... 16, 25

26 U.S.C. § 6651(a)(1) .......... 8, 17

26 U.S.C. § 6651(a)(2) .......... 8

28 U.S.C. § 1295(a)(2) .......... 1

28 U.S.C. §§ 1491 *et seq.* .......... 1

**OTHER AUTHORITIES**

26 CFR 20.2056A-1(b) .......... 24

Treasury Regulation § 20.2056A-1(b) .......... 7, 21

## STATEMENT OF RELATED CASES

No other appeal in or from this civil action was filed before this or any other appellate court. In addition, there is no case known to counsel for Appellant to be pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

## STATEMENT OF JURISDICTION

1. The Estate of Morton Liftin, John Liftin, Executor (the "Estate") filed a complaint against the United States seeking a complete refund of all penalties that it paid related to the filing of its federal estate tax return. The United States Court of Federal Claims had original jurisdiction over that civil action by virtue of 28 U.S.C. 1491 *et seq*.

2. Final judgment was entered against the Estate on April 3, 2013, which disposed of all parties' claims.

3. The Estate's Motion for Reconsideration of the April 3, 2013 judgment was denied on May 17, 2013.

4. On June 7, 2013, the Estate filed its notice of appeal.

5. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. 1295(a)(2).

## STATEMENT OF THE ISSUE

Whether the United States Court of Federal Claims (the "Court of Federal Claims") erred by holding, on cross-motions for summary judgment, that the Estate did not have reasonable cause to delay the filing of its federal estate tax return until the Estate's ancillary legal matters were completed when (a) the Estate's attorney advised the Estate that the law permitted such a delay and the Estate reasonably relied on that advice, and (b) the Estate had reasonable cause to miss the extended statutory deadline to file its estate tax return and, having done so, was reliant on its attorney's substantive tax advice as to when the law required the Estate to file its estate tax return.

## STATEMENT OF THE CASE

On September 1, 2010, the Estate filed its complaint against the Government seeking a refund of all penalties related to the Estate's filing of its federal estate tax return after the extended statutory deadline[1]. The Estate argues that it is entitled to have those penalties abated based on reasonable cause because of its good faith reliance on an expert's advice regarding the deadline to file its federal estate tax return.

The Government filed a motion for judgment on the pleadings on January 14, 2011. On November 8, 2011, the Court of Federal Claims denied that motion.

On May 10, 2012, the Estate filed a motion for summary judgment, arguing that the Estate's reliance on an expert's advice constituted reasonable cause without willful neglect. On August 2, 2012, the Government filed a cross-motion for summary judgment, arguing that the Estate failed to carry its burden of establishing reasonable cause. On March 29, 2013, the Court of Federal Claims denied the Estate's motion for summary judgment and granted the Government's motion for summary judgment. (A0001-12; JA00001-12.)[2] On April 3, 2013, the Court of Federal Claims entered judgment in favor of the Government. (A0013; JA00013.)

---

[1] On October 1, 2010, the Estate filed an amended complaint and on March 7, 2011, the Estate filed a second amended complaint.

[2] The citation (A____.) refers to the Addendum, which is attached to this brief. The citation (JA____.) refers to the Joint Appendix, which will be filed separately.

On April 25, 2013, the Estate filed a motion for reconsideration, which was denied.

On June 7, 2013, the Estate timely filed its notice of appeal.

**STATEMENT OF THE FACTS**

Morton Liftin ("Decedent") died on March 2, 2003, and was survived by his wife, Anna Lavandez Liftin ("Mrs. Liftin"), and his son, who was also the executor of the Estate ("Executor"). (JA00067-68.) As a result of Decedent's death, Mrs. Liftin was entitled to receive distributions of assets from the Estate. (JA00068.) To assist with the administration of the Estate's assets, the Estate engaged the law firm of Morrison & Foerster LLP and one of its attorneys, John Dadakis, who had expertise in private wealth services and tax planning. (JA00069; JA00134-135.)

Mr. Dadakis advised the Estate on various tax matters related to the Estate, including whether the Estate was eligible to take a marital deduction for property passing to Mrs. Liftin. (JA00135-136.) This issue posed a technical problem because, at the time of Decedent's death, Mrs. Liftin was a Bolivian citizen and the Internal Revenue Code (the "Code") did not permit an estate to take a marital deduction for property passing to a surviving spouse who was not a United States citizen. 26 U.S.C. § 2056(d)(1). The Code did, however, permit an estate to take a marital deduction if the surviving spouse became a United States citizen prior to the day on which the estate tax return was "made." 26 U.S.C. § 2056(d)(4). Apart from the issue of the surviving spouse's citizenship, the Code required that the Estate file a federal estate tax return (*i.e.* Form 706) by December 2, 2003, nine months after Decedent's death. 26 U.S.C. § 6075(a).

On November 26, 2003, the Estate requested a six-month extension of time to file its federal estate tax return and pay the taxes due, which was subsequently granted by the IRS. (JA00073.) Shortly thereafter, Mrs. Liftin employed the law firm of Maggio & Kattner to represent her in her application for naturalization. (JA00070.) On January 16, 2004, well before the extended deadline had expired, the Estate made a tax payment of $877,300, which the Estate estimated would be sufficient to satisfy the taxes due if the Estate was unable to claim the marital deduction. (JA00073.)

During that time, the Executor sought the advice of Mr. Dadakis as to whether the Estate could properly wait until Mrs. Liftin became a naturalized United States citizen to file the Estate's tax return and still claim the marital deduction. (JA00069; JA00231-232; JA00227.) Mr. Dadakis specifically advised the Executor that filing the federal estate tax return after Mrs. Liftin became a naturalized United States citizen and all other ancillary matters were completed would not only preserve the Estate's full marital deduction, but also would not trigger a late filing penalty by the IRS. (JA00228; JA00231-232.) This advice seemed reasonable to the Executor, given that Mr. Dadakis was an expert in this area of law and it also allowed the Executor to properly discharge his fiduciary duty to the beneficiaries by minimizing the Estate's federal estate tax. (JA00231-232.) Further, the Executor confirmed with Mr. Dadakis on *several* occasions that

filing the federal estate tax return after the normal due date would not trigger a late filing penalty (while still allowing the Estate to take a full marital deduction). (*Id.*) Mr. Dadakis repeatedly confirmed this advice to the Executor (*Id.*) and the Executor then filed the federal Estate Tax Return Form 706 by the deadline advised by Mr. Dadakis. (JA00228; JA00232.)

The IRS subsequently inquired by letter dated October 4, 2004 as to why the Estate had not filed a timely estate tax return and, in response, Mr. Dadakis wrote a letter to the IRS setting forth the Estate's position, as well as Mr. Dadakis's rationale for concluding that Treasury regulation § 20.2056A-1(b) allowed a late filing in order to take advantage of the marital deduction. (JA00071-72.) The IRS never responded to Mr. Dadakis's letter. (*Id.*)

On August 3, 2005, Mrs. Liftin became a naturalized United States citizen. (JA00070.) On February 16, 2006, Mrs. Liftin and the Estate entered into a global agreement settling Mrs. Liftin's other claims against the Estate. (JA00071; JA00228-229.)

The Executor then filed the Estate's federal estate tax return on May 9, 2006. (JA00217; JA00228-229.) This filing date was within the deadline that Mr. Dadakis advised was proper (*i.e.* within a reasonable time after Mrs. Liftin became a naturalized United States citizen and after all other ancillary matters were completed). (JA00231-232.) The federal estate tax return reflected a total tax of

$678,572.25 and an overpayment of $198,727.75. (JA00217.) The IRS accepted the filed federal estate tax return and did not propose any substantive adjustments, other than the late penalties, one of which is the subject of this appeal. (JA00229.) About a month later, the IRS issued a Notice of Adjustment reflecting a penalty of $169,643.06 for late filing and late payment pursuant to Code § 6651(a)(1) and Code § 6651(a)(2) (exactly 25% of the total tax due). (JA00217.) In 2006, the Estate filed a refund claim with the IRS, which was denied. (JA00220.) After an administrative appeal within the IRS, the IRS granted a partial refund of $33,928.61, leaving a remaining claim of $135,714.45. (*Id.*) On or about September 1, 2010, the Estate filed a complaint seeking a refund of the remaining $135,714.45, plus statutory interest. (JA00014-21.)

On January 14, 2011, the government filed a Motion for Judgment on the Pleadings, arguing that the Estate's reliance on an attorney's advice was legally insufficient to constitute reasonable cause. (JA00042-66.) The Court of Federal Claims denied this motion, holding that the Estate had made a sufficient showing that its failure to timely file "was due to reasonable cause because it relied in good faith on expert advice concerning a substantive question of tax law and that its failure to timely file was not the result of willful neglect." (JA00186.) The Court of Federal Claims observed that Mr. Dadakis's advice was not a matter of strategic timing; instead, it concerned "a substantive question of tax law regarding the time

allowed by law for the Estate to file its return without penalty and qualify for a marital deduction." (JA00191.)

On May 10, 2012, the Estate filed a Motion for Summary Judgment, arguing that since the Estate, in good faith, relied on an expert who advised the Estate as to the law governing the proper time to file an estate tax return, and the Estate followed that advice, the Estate was entitled, as a matter of law, to have any late filing penalty abated. (JA00194-236.) The Government responded with a cross-motion for summary judgment, arguing that the Estate had failed to carry its burden of establishing that its late filing was due to reasonable cause and not willful neglect. (JA00237-730.)

On March 29, 2013, the Court of Federal Claims issued an Opinion and Order, denying the Estate's Motion for Summary Judgment and granting the Government's cross-motion. (A001-12; JA00001-12.) The Court observed: "Dadakis' advice concerned a substantive question of tax law regarding the interaction between the statutes and regulations providing the marital deduction and the statues and regulations setting a deadline for filing the Estate's return." (A0010; JA00010.) As such, the Estate had reasonable cause to delay filing its Estate tax return until after Mrs. Liftin became a U.S. citizen. (A0010-11; JA00010-11.) Unlike its March 29, 2013 ruling on the Government's Motion for Judgment on the Pleadings, however, the Court artificially bifurcated Mr.

Dadakis's advice by splitting it into two separate and distinct pieces: (1) the delay for filing the Estate tax return in order to allow Mrs. Liftin to become a U.S. citizen, and (2) the delay to complete all other ancillary matters. (A0011; JA00011.) As to the latter, the Court held that such advice was not an interpretation of substantive tax law and therefore the Estate did not have reasonable cause to rely on it. (*Id*.) Having determined that a portion of the Estate's delay in filing its estate tax return was not due to reasonable cause, the Court denied the Estate's motion for summary judgment and granted the Government's cross-motion for summary judgment. (A0012; JA00012.)

## SUMMARY OF THE ARGUMENT

The Estate is entitled to a complete abatement and refund of all late filing penalties paid and related interest because the Estate, in good faith, relied on an expert who provided substantive tax advice to the Estate as to the law governing the proper time to file an estate tax return, and the Estate followed that advice, which constitutes reasonable cause.

Pursuant to I.R.C. § 6075(a), the Estate was required to file a federal estate tax return (*i.e.* Form 706) within nine months after Decedent's death. Before the filing of Form 706, the Executor consulted an attorney, Mr. Dadakis, whose expertise was private wealth services and tax planning, and who specifically advised the Executor that a late-filed federal estate tax return would not trigger a late filing penalty so long as the tax return was filed within a reasonable time after Mrs. Liftin became a naturalized United States citizen *and* after all other ancillary matters were completed. Relying on that advice, the Executor then filed the Form 706 within the time period prescribed by Mr. Dadakis[3].

A taxpayer is entitled, as a matter of law, to have a late filing penalty abated if the taxpayer establishes that the late filing of a tax return was due to reasonable cause and not the result of willful neglect. *United States v. Boyle*, 469 U.S. 241,

[3] Additionally, in order to ensure that the IRS received all funds that it was owed, the Executor had previously made a large timely tax payment of the amount of tax estimated to be due if the Estate was unable to claim a marital deduction.

245 (1985). When, in good faith, a taxpayer reasonably relies on an expert who advises the taxpayer as to the law governing the proper time to file an estate tax return, and the taxpayer follows that advice, such late filing will be considered to be attributable to reasonable cause and not willful neglect. *Estate of La Meres v. Comm'r*, 98 T.C. 294, 318 (1992) (further citations omitted). As such, the late filing penalty paid by the Estate should be abated and refunded in full.

When ruling on the cross-motions for summary judgment, the Court of Federal Claims acknowledged that Mr. Dadakis's advice was, in part, substantive in nature because the advice concerned the "interaction between the statutes and regulations providing the marital deduction and the statues and regulations setting a deadline for filing the Estate's return." (A0010; JA00010.) As such, the Court of Federal Claims held that the Estate had reasonable cause to delay the filing of its Estate tax return until Mrs. Liftin became a U.S. citizen.

The Court of Federal Claims erred, however, when it artificially bifurcated Mr. Dadakis's advice into two separate and distinct pieces: (1) the delay for filing the Estate tax return in order to allow Mrs. Liftin to become a U.S. citizen, and (2) the delay to complete all other ancillary matters. As to the latter piece, the Court held that such advice was not an interpretation of substantive tax law and therefore the Estate's reliance on such advice did not constitute reasonable cause. The case law addressing this issue, however, makes clear that Mr. Dadakis's advice

regarding the second prong was substantive because it concerned more than ascertaining an unambiguous statutory deadline; it was an expert opinion on when the law required the Estate to file its estate tax return given the fact that the Estate had reasonable cause for not satisfying the extended statutory deadline.

Indeed, when a taxpayer's circumstances justify filing a tax return sometime ***after*** a fixed statutory filing date, as was done here, that taxpayer is generally dependent on an attorney's advice as to when the law requires that taxpayer to ultimately file its tax return. *See United States v. Boyle*, 469 U.S. 241, 251 (1985) (a taxpayer has a duty to ascertain and follow only known statutory deadlines). When the Estate delayed the filing its tax return beyond the statutory due date, which the Court of Federal Claims held amounted to reasonable cause, the Estate had no other guidance or information as to the precise date that the estate tax return was actually due (besides Mr. Dadakis's advice).

Thus, Mr. Dadakis's advice, in its entirety, was substantive in nature and, as such, reliance on that advice constituted reasonable cause. Accordingly, the Court of Federal Claims erred when it denied the Estate's Motion for Summary Judgment and granted the Government's cross-motion.

## ARGUMENT

The Estate takes issue with only one narrow aspect of the Court of Federal Claims's decision regarding the cross-motions for summary judgment: that the Estate's reliance on Mr. Dadakis's substantive advice, that it could permissibly delay the filing of its federal estate tax return until after all other ancillary matters were completed, did not constitute reasonable cause. Indeed, the Estate takes no issue with the remainder of the Court of Federal Claims's decision, including the holding that the Estate had reasonable cause to delay the filing of its estate tax return until Mrs. Liftin became a naturalized US citizen and that the doctrine of substantial variance does not bar the Estate's claim.

On cross-motions for summary judgment, the Court of Federal Claims correctly held that the Estate had reasonable cause to delay the filing of its federal estate tax return until the completion of Mrs. Liftin's naturalization, which ultimately occurred about a year after the extended statutory deadline expired. The Court of Federal Claims erred, however, by holding that the Estate's reliance on Mr. Dadakis's advice, that it could further delay filing to complete certain other ancillary matters, was not substantive advice and, therefore, did not constitute reasonable cause. This advice was substantive because the Estate had justifiably passed the extended statutory deadline and, without a fixed statutory deadline to refer to in the statute or Treasury Regulations ("Regulations"), the Estate was

utterly and solely reliant on Mr. Dadakis's advice as to the date upon which the estate tax return should be filed. Without a statutory deadline, this determination necessarily required an analysis of substantive tax law and, as such, Mr. Dadakis's advice was substantive and a proper basis for reasonable cause and penalty abatement.

**A. Standard of Review.**

The standard of review of the order granting a motion for summary judgment is: *de novo* review. *Ladd v. United States*, 713 F.3d 648, 651 (Fed. Cir. 2013).

**B. Summary Judgment Standard.**

The Estate is entitled to summary judgment because there is no genuine issue of material fact and the Estate is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Disputes over facts that are not outcome-determinative do not preclude the entry of summary judgment. *Stovall v. United States*, 94 Fed. Cl. 336, 344 (2010). When a court is making a summary judgment determination, the court is not to weigh the evidence, but should determine whether there is a genuine issue for trial. *Id.* (citing *Anderson*, 477 U.S. at 249). Where there is a genuine dispute, all facts must be construed, and all inferences drawn from the evidence must be viewed, in the light most favorable to the party opposing the motion. *Id.* (citing *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). When there is no genuine issue as to any material fact, however, and the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *Anderson*, 477 U.S. at 247-48.

**C. The Estate had Reasonable Cause for Filing a Late Estate Tax Return Until Mrs. Liftin's Naturalization.**

The Court of Federal Claims correctly held that the Estate's reliance on Mr. Dadakis's substantive advice (that the Estate could delay filing until Mrs. Liftin became a naturalized United States citizen) constituted reasonable cause. A federal estate tax return must be filed within nine months after a decedent's death, and a failure to do so may result in a penalty of up to a 25% addition to the tax owed. I.R.C. § 6075(a); I.R.C. § 6651(a). A taxpayer may avoid this penalty by showing that the failure to timely file a tax return was: (1) due to reasonable cause, and (2) did not result from willful neglect. *United States v. Boyle*, 469 U.S. 241, 245 (1985).

The Tax Court has consistently held that a taxpayer's reliance on certain "legal advice with respect to the date on which a return must be filed" constitutes reasonable cause for a late-filed tax return if that reliance is reasonable. *Estate of La Meres v. Comm'r*, 98 T.C. 294, 318 (1992) (holding that reasonable reliance on the erroneous advice of an attorney with respect to the due date of a return

constitutes reasonable cause within the meaning of § 6651(a)(1))[4]; *Estate of DiPalma v. Comm'r*, 71 T.C. 324, 327 (1978) (holding that the Executor had reasonable cause for late filing when she relied on her attorney's advice that a pending dispute justified a delay in filing); *Estate of Rapelje v. Comm'r*, 73 T.C. 82, 90 n.9 (1979); *Estate of Bradley v. Comm'r*, 33 TCM 70, 72-73 (1974); *accord Sanderling, Inc. v. Comm'r*, 571 F.2d 174, 178-79 (3d Cir. 1978).

The United States Tax Court considers four factors when it determines whether reliance on an attorney's advice constitutes reasonable cause: (a) whether the taxpayer has made full disclosure to the expert, (b) whether the expert gave the advice with respect to the due date on which the return must be filed, (c) whether the taxpayer relied in good faith on the expert's advice, and (d) whether the taxpayer did not otherwise know that the tax return was due. *La Meres*, 98 T.C. at 318 (further citations omitted). To the extent that Mr. Dadakis advised the Estate that Mrs. Liftin's naturalization application permitted the Estate to delay the filing of its Form 706, the Court of Federal Claims correctly held that the Estate satisfied

[4] The court in *La Meres* identified three categories of cases that addressed whether reliance on an agent constitutes reasonable cause for failure to file a timely tax return, with the third category having two subcategories. *La Meres v. Comm'r*, 98 T.C. at 315-18. The facts of this case fall squarely into the second subcategory of the third category, which address those taxpayers whose late filing was caused by certain expert advice as to the date that the law required the taxpayer to file its tax return. *Id.* at 318.

these four factors and, as such, the Estate's reliance on such advice constituted reasonable cause. (A0008-11; JA0008-11.)

### D. Mr. Dadakis's Advice That The Estate Could Delay Filing Until all Other Ancillary Matters were Complete was Substantive in Nature and a Proper Basis for Finding Reasonable Cause.

The Court of Federal Claims erred when it held that Mr. Dadakis's advice that, following Mrs. Liftin's naturalization, the Estate could further delay the filing until all other ancillary matters were completed was "not an interpretation of substantive tax law" and therefore cannot serve as a basis for reasonable cause. (A0011; JA00011.) There is no dispute that the Estate satisfied the four factors outlined in *La Meres* with respect to this advice (*i.e.* the Estate made full disclosure to Mr. Dadakis, Mr. Dadakis gave the advice, the Estate relied in good faith on the advice, and the Estate did not otherwise know that the return was due). (A0001-12; JA00001-12.) The dispute here lies with whether the advice itself was substantive in nature because, if it was not, then the Estate's reliance on such advice does not constitute reasonable cause. *See Boyle*, 469 U.S. at 250-51.

#### *i. Advice is substantive when it concerns an interpretation of tax law.*

In determining whether advice is substantive, the Supreme Court has distinguished between advice from an attorney involving (a) an interpretation of substantive tax law, which can constitute reasonable cause, and (b) an attorney's assistance in meeting the requirements of unambiguous statutes, which cannot

constitute reasonable cause. *Id.*; *see also Knappe v. United States*, 713 F.3d 1164, 1174 (2013) (advice is non-substantive when it involves a non-delegable duty, like ascertaining an unambiguous statutory deadline). The Supreme Court explained:

> Most taxpayers are not competent to discern error in the substantive tax advice of an accountant or attorney … By contrast, one does not have to be a tax expert to know that tax returns have **fixed filing dates** and that taxes must be paid when they are due. In short, tax returns imply deadlines. Reliance by a lay person on a lawyer is of course common; but that reliance cannot substitute for compliance with an **unambiguous statute.**

*Boyle*, 469 U.S. at 251-52 (emphasis added).

Thus, in general, a taxpayer has the duty to ascertain the fixed, statutory filing date for its tax return and file its tax return by that date. *Id.* (ascertaining a statutory deadline requires no special training). Further, advice regarding these fixed, statutory filing dates is generally nonsubstantive because a taxpayer is able to read and to comprehend an unambiguous statute. *Id.*

If, however, the issue turns on an interpretation of tax law, or if there is no unambiguous statute underlying the attorney's advice, that advice is considered substantive. *Id.*; *see also Estate of La Meres*, 98 T.C. at 320-21 (the attorney's advice that the estate was entitled to a second six-month extension to file was substantive in nature because the "statute does not explicitly state that the Secretary may only grant one extension."); *see also Estate of DiPalma v. Comm'r*, 71 T.C. 324, 327 (1978) (an attorney's advice that a pending dispute justified a delay in

filing was substantive and constituted reasonable cause); *see also Knappe*, 713 F.3d at 1174 ("[W]e treat the distinction between substantive and nonsubstantive matters as coterminous with the distinction between an executor's delegable and nondelegable duties.")

*ii. Mr. Dadakis's advice was substantive because there was no unambiguous statute underlying his advice and the advice required an interpretation of substantive tax law.*

The Court of Federal Claims correctly held that, to the extent that Mr. Dadakis advised the Estate that it could permissibly delay the filing of its tax return until Mrs. Liftin became a naturalized United States citizen, the Estate had reasonable cause to delay its filing. (A0010; JA00010.) This is because "Dadakis's advice concerned a substantive question of tax law regarding the interaction between the statutes and regulations providing for the marital deduction and the statute and regulations providing for the deadline for filing the Estate's return." (*Id.*)

This means that the Estate had reasonable cause until at least the date of Mrs. Liftin's naturalization, August 3, 2005, which was ***over a year after*** the extended statutory deadline of June 2, 2004. (JA00070; JA00073.) Since, by that time, the extended statutory deadline had long expired, the Executor had no unambiguous and fixed statutory deadline to ascertain. *Boyle*, 469 U.S. at 251-52 (a taxpayer has the non-delegable duty to ascertain only unambiguous statutory

deadlines). Indeed, once beyond the extended statutory deadline, the Estate had no "fixed filing date" to refer to, nor did it have an "unambiguous statute" to provide it with guidance as to when to file the return. This legal "no man's land" was not resolved by the Court of Federal Claims, which was silent on when, precisely, the Estate should have filed its federal estate tax return[5]. (*See* A0011-12; JA00011-12.) Was it on the day of Mrs. Liftin's naturalization? A reasonable time afterwards? The statutory nine months with potential extensions that is normally afforded to those filing a federal estate tax return? The Court of Federal Claims was silent on this issue, and so are the applicable statute and Regulations.

In fact, when confronted with amending 26 U.S.C. 2056(d)(4) to potentially address some of these issues, Congress declined to do so, preferring to let the courts make a determination on a "case by case" basis:

> It is possible that the naturalization process may not be completed before the due date, including extensions, for filing the estate tax return. Comments suggested that if the surviving spouse has filed an application for naturalization within a reasonable time after the decedent's death, then any late filing of the return pending the outcome of the citizenship process should be treated as due to reasonable cause for purposes of section 6651 (imposing penalties for failure to file returns and failure to pay tax). *This suggestion was not adopted because the existence of reasonable cause for late-filing and late-payment should be determined on a case by case basis applying established standards as prescribed under current law.*

[5] The IRS had the opportunity to provide guidance on this issue in response to Mr. Dadakis's letter explaining the rationale for concluding that Regulation § 20.2056A-1(b) allowed a late filing in order to take advantage of the marital deduction. (JA00071-72.) The IRS, however, declined to so respond. (*Id.*)

(JA00902)(*emphasis added*).

At the very least, one can reasonably conclude that the Estate would have had some period of time after Mrs. Liftin's naturalization to file its estate tax return. Mr. Dadakis's advice defined and provided guidance on that period of time in the absence of a fixed statutory deadline and, as such, his advice was substantive in nature. *See Estate of La Meres*, 98 T.C. at 320-21. Further, in the absence of a precise deadline to file the Estate's tax return, the Court of Federal Claims erred in ruling on summary judgment that the Estate had missed that deadline, especially given the deferential standard for such a motion. *Matsushita*, 475 U.S. at 587 (on a motion for summary judgment, all facts must be construed, and all inferences drawn from the evidence must be viewed, in the light most favorable to the party opposing the motion).

Since no statute, regulation, or court case has addressed this issue, the Estate was utterly reliant on Mr. Dadakis's substantive advice as to when the law required that the Estate to file its tax return, which the Estate followed[6]. (JA00228.) As such, the Court of Federal Claims erred when it held that Mr. Dadakis's advice was nonsubstantive in nature and therefore did not constitute reasonable cause.

---

[6] "As a direct result of my advice, my client, the Executor, relied on such advice and waited until a reasonable time after Mrs. Liftin became a naturalized United States citizen and after all other ancillary matters were completed to file the Estate's federal tax return. My client filed the Form 706 within the time frame recommended by me." (JA00228.)

*iii. The case law cited by the Court of Federal Claims is distinguishable from the facts of this case.*

To support its holding that Mr. Dadakis's advice was nonsubstative, the Court of Federal Claims cites to two cases which, when analyzed in light of the facts of this case, actually highlight the substantive nature of Mr. Dadakis's advice. (A0011; JA00011.) These cases, *Estate of Young v. United States*, No. 11-11829, 2012 WL 6585327 (D. Mass. Dec. 17, 2012) and *Russell v. Comm'r*, 101 T.C.M. (CCH) 1363 (2011), both involve a taxpayer who missed a known statutory deadline in reliance on advice that it was permissible to miss the deadline in order to file an accurate tax return. Both cases stand for the general proposition that one does not need to be an expert to know that one's taxes must be filed by their statutory due date and, as such, reliance on the advice of a professional to delay such a filing in order to file a more accurate return does not constitute reasonable cause. *See Young*, 2012 WL 6585327 at *2; *Russell*, 101 T.C.M. (CCH) 1363, at *6-7.

This case, however, differs from *Young* and *Russell* in one critical way: the Estate did not miss the extended statutory deadline because of Mr. Dadakis's belief that the law permitted the Estate to wait and file an "accurate" return; it missed the deadline in reliance on Mr. Dadakis's advice that the law permitted the Estate to do so while Mrs. Liftin pursued naturalization, which the Court of Federal Claims found to constitute reasonable cause. (A0009-11; JA00009-11.)

True, the onus is on taxpayers to know the fixed statutory dates for filing their tax returns. *Boyle*, 469 U.S. at 251. However, when the taxpayer's circumstances justify filing a tax return sometime *after* that fixed statutory filing date, that taxpayer is generally dependent, as noted previously, on an attorney's advice as to when the law requires that taxpayer to file its tax return. *See Id.* (requiring the client to monitor counsel on the provisions of the Internal Revenue Code "would nullify the very purpose of seeking the advice of a presumed expert in the first place."); s*ee also La Meres*, 98 T.C. at 318. When the Estate delayed the filing of its tax return beyond the statutory due date, which the Court held amounted to reasonable cause, the Estate had no other guidance or information as to when the tax return was due besides Mr. Dadakis's advice. *See Young*, 2012 WL 6585327 at *2 (a taxpayer only has a duty to comply with "known" filing deadlines).

Since the Regulations here contemplate the filing of a late tax return anyway and there is no fixed deadline for the filing of that late tax return, the Estate could only rely on its attorney's substantive advice for that issue. *Boyle*, 469 U.S. at 251; *see also* 26 CFR 20.2056A-1(b). As such, Mr. Dadakis's advice was substantive in nature and distinguishable from the cases cited by the Court of Federal Claims.

*iv. The facts of this case are much more similar to those in Estate of DiPalma v. Comm'r, 71 T.C. 324 (1978*).

The facts of this case are very similar to those in *Estate of DiPalma v. Comm'r*, 71 T.C. 324 (1978) where, based upon an attorney's advice, an executrix believed that ancillary litigation involving the estate justified her delay in filing a tax return. *DiPalma*, 71 T.C. at 327. The court found this to be substantive tax advice and, as such, imposed no addition to the estate's taxes under § 6651(a) of the Code. *Id.* Similarly, in this case, Mr. Dadakis advised the Estate that all other ancillary matters, including post-naturalization litigation with the just-naturalized surviving spouse, justified a delay in filing the Estate's tax return. (JA00227-228.) The *DiPalma* court's holding applies even more forcefully here because the taxpayer in *DiPalma* missed the *statutory* deadline in reliance on an attorney's advice that ancillary litigation justified such a delay. *See DiPalma*, 71 T.C. at 327. In this case, the Estate already had reasonable cause to miss the extended statutory deadline and, having done so, was singularly reliant on its attorney to provide guidance as to when the law required the Estate to file its estate tax return. (*See* A0008; JA00008.) As such, Mr. Dadakis's advice regarding such other ancillary matters was also an interpretation of substantive tax law and is therefore a proper basis for finding reasonable cause.

**E. The Estate's Late-Filed Tax Return was Not the Result of Willful Neglect.**

To avoid a penalty for late filing, the Estate must also show that the late filing was not the result of willful neglect, or "conscious, intentional failure or reckless indifference." *Boyle*, 469 U.S. at 245. Conscious or intentional indifference exists where the taxpayer "was aware of his duty to file a return within the due date, but failed to file the return under circumstances that do not justify such failure." *Estate of Campbell v. Comm'r*, 62 T.C.M. (CCH) 1514 (1991). Reckless indifference is established when the "taxpayer was aware of a duty to file on time, but disregarded a known or obvious risk that the return might not be filed within the due date." *Id.*

In this case, the Executor made every effort to be in compliance with the Code, including the consultation of Mr. Dadakis and the making of a timely tax payment for the full amount estimated to be due even if the Estate was unable to claim a marital deduction. (JA00073.) Additionally, the Executor had a good-faith belief after a number of discussions with Mr. Dadakis that the deadline for filing the estate tax return was within a reasonable time after Mrs. Liftin became a naturalized United States citizen and after all other ancillary matters were completed. (JA00231-232; JA00218.) Accordingly, the Executor believed that he was complying with the law by paying the amount of tax estimated to be due, and then by filing the Estate's tax return before the "deadline" as advised by Mr.

Dadakis. (JA00231-232.) Having complied with the deadline that the Executor believed to be applicable, the late filing cannot be the result of willful neglect.

## CONCLUSION

All of Mr. Dadakis's advice was substantive in nature because it concerned an interpretation of tax law and, as such, it was a proper basis for a claim of reasonable cause. Further, there is no dispute that the Estate made a full disclosure to Mr. Dadakis, relied in good faith on his advice regarding when the Estate's tax return was due, and did not otherwise know when its return was due. This reliance on Mr. Dadakis's substantive advice provides the Estate with reasonable cause for its late filing of the estate tax return. Moreover, since the Executor complied with the deadline provided by Mr. Dadakis, the late filing cannot be the result of willful neglect. Accordingly, this Court should reverse the Court of Federal Claims's April 3, 2013 Order and remand the case with instructions to enter summary judgment in favor of the Estate or such other relief that the Court deems just.

Respectfully submitted,

Dated: August 8, 2013

/s/ Jonathan E. Strouse
JONATHAN E. STROUSE
Attorney for Plaintiff
Holland & Knight, LLP
131 South Dearborn, 30th Floor
Chicago, IL 60603
Tel: (312) 263-3600
Fax: (312) 578-6666

# ADDENDUM

# CONTENTS OF ADDENDUM


| **ADD. PAGE NOS.** | **ITEM** |
|---|---|
| A0001-0012 | March 29, 2013 Opinion and Order denying the Estate's Motion for Summary Judgment and granting the Government's Motion for Summary Judgment (JA00001-12) |
| A0013 | April 3, 2013 order entering judgment in favor of the Government (JA00013) |
| A0014-0016 | 26 U.S.C. § 6651(a)(1) and (2) |
| A0017 | 26 U.S.C. § 6075(a) |
| A0018-0024 | 26 U.S.C. § 2056(d)(1) |
| A0025-0029 | 26 C.F.R. § 301.6651-1(c) |
| A0030-0031 | 26 C.F.R. § 20.2056A-1(b) |
| A0032-0033 | 26 C.F.R. § 20.6081-1(d) |

# In the United States Court of Federal Claims

No. 10-589
(Filed: March 29, 2013)
**TO BE PUBLISHED**

| | |
|---|---|
| THE ESTATE OF MORTON LIFTIN, JOHN LIFTIN, EXECUTOR,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | Estate Tax Refund Claim; Reasonable Cause for Late Filing; Reasonable Reliance on Advice of Counsel; Substantial Variance; 26 U.S.C. § 6651; *United States v. Boyle*, 469 U.S. 241 (1985); *Estate of La Meres v. Comm'r*, 98 T.C. 294 (1992). |

Jonathan Edward Strouse, Holland & Knight, LLP, Chicago, IL, for plaintiff.

Paul Galindo, Trial Attorney, Mary M. Abate, Assistant Chief, David I. Pincus, Chief, Court of Federal Claims Section, Kathryn Keneally, Assistant Attorney General, Tax Division, United States Department of Justice, Washington, D.C., for defendant.

**OPINION AND ORDER**

GEORGE W. MILLER, Judge

Before the Court for decision in this tax refund case are the parties' cross-motions for summary judgment. The parties dispute whether the Internal Revenue Service ("IRS") correctly assessed a late-filing penalty. Plaintiff asserts that, since it relied on advice from its attorney that its return was not yet due, its failure to timely file its estate tax return was due to reasonable cause and did not result from willful neglect. *See* Pl.'s Mot. Summ. J. (docket entry 41, May 10, 2012). Defendant asserts that the advice plaintiff received from its attorney did not constitute reasonable cause for plaintiff's late filing. *See* Def.'s Cross-Mot. Summ. J. (docket entry 48, Aug. 2, 2012). For the reasons that follow, the Court **DENIES** the Estate's motion for summary judgment and **GRANTS** the Government's cross-motion.

## I. Background

Morton Liftin (the "Decedent") died on March 2, 2003. Decedent appointed his son, John Liftin ("the Executor"), as the executor of his estate (the "Estate"). Pl.'s Resps. to Def.'s Statement of Material Facts ("Pl.'s Resps. DMF") ¶¶ 1, 3 (docket entry 54, Oct. 2, 2012). Decedent's will provided for direct bequests to, among others, Decedent's surviving spouse, Anna G. Lavandez Liftin ("Mrs. Liftin"), who was a U.S. resident and citizen of Bolivia at the

time of Decedent's death. *Id.* ¶¶ 2, 18. Mrs. Liftin also asserted claims against the Estate arising out of her rights under a prenuptial agreement with Decedent. *Id.* ¶ 2. The Estate refers to those claims as "ancillary matters."

Pursuant to Internal Revenue Code ("I.R.C.") § 6075(a), the Estate was required to file a federal estate tax return (Form 706) by December 2, 2003, nine months after Decedent's death. I.R.C. § 6075(a). Section 6081(a) permits the Secretary to grant a reasonable extension of up to six months for the filing of a return. I.R.C. § 6081(a). The applicable regulations provide that the total allowable time for filing, including extensions, is fifteen months from decedent's death. *Estate of Maltaman v. Comm'r*, 73 T.C.M. (CCH) 2162, at *4 (1997) (citing 26 C.F.R. § 20.6081–1).

The Executor employed his former law partner, John D. Dadakis, to assist with the Estate's federal estate tax return and administration of the Estate's assets, including claims by Mrs. Liftin against the Estate. Decl. of John Liftin ("Liftin Decl.") ¶ 3 (docket entry 41-1, May 10, 2012); Pl.'s Resps. DMF ¶¶ 4–5. Dadakis, who was at that time a partner at the law firm of Morrison & Foerster LLP, has expertise in private wealth services and estate and gift tax planning. Liftin Decl. ¶ 3; Pl.'s Resps. DMF ¶ 4.

In discussions both before and after Decedent died, Dadakis advised the Executor regarding the effect of Mrs. Liftin's citizenship status on the Estate's federal estate tax return. Pl.'s Resps. DMF ¶ 15. In general, the value of property which passes from the decedent to a surviving spouse may be deducted from the value of the estate that is subject to the federal estate tax. I.R.C. § 2056(a). This so-called "marital deduction" is not available, however, if the surviving spouse is not a U.S. citizen. § 2056(d)(1)(A). Nevertheless, if the spouse becomes a citizen before the estate tax return is filed and has been a resident of the United States at all times after the decedent's death and before becoming a citizen, the Estate may take the deduction. § 2056(d)(4). Thus, as Dadakis advised, the Estate could not have taken the marital deduction pursuant to § 2056(a) unless Mrs. Liftin was a U.S. citizen when it filed its return. *See* Dadakis Dep. 38:21–39:4 ("If the estate had filed a federal estate tax return [before Mrs. Liftin became naturalized], we would not have been able to obtain a federal -- a marital deduction. And once filed, we could not go back and amend that return to -- even if she did become a U.S. citizen afterwards."). Dadakis advised the Executor that he had a fiduciary duty to attempt to obtain a marital deduction. *Id.* at 40:1–3.[1]

On November 26, 2003, six days before the Estate's return and taxes were due, the Estate requested a six-month extension of time to file its return and pay the taxes due. Cross-Mot. Ex. C, at 180–82. On January 16, 2004, the IRS granted the Estate's request for an extension of time

[1] As an alternative to Mrs. Liftin becoming a citizen, the Estate could have taken a marital deduction pursuant to I.R.C. § 2056A if the property passed to Mrs. Liftin through a so-called "qualified domestic trust" ("QDOT"). Plaintiff states, however, that "because the decedent's property passed outright to Mrs. Liftin . . . , only Mrs. Liftin, at her sole discretion, could transfer or assign the property to a QDOT. . . . Mrs. Liftin never cooperated or voluntarily agreed to transfer the property to a QDOT and, therefore, a QDOT was not available to [p]laintiff." Pl.'s Resps. DMF ¶ 18.

to file, setting a new deadline of June 2, 2004.[2] Cross-Mot. Ex. D, at 183. On January 20, 2004, the Estate made a tax payment of $877,300, an amount which the Estate estimated would be sufficient to satisfy the taxes due even if it were unable to claim the marital deduction. *See* Cross-Mot. Ex. E, at 184; Def.'s Objections and Resps. Pl.'s "Undisputed Facts" ("Def.'s Resps. PMF") 5 (docket entry 50, Aug. 2, 2012).

Thereafter, the Executor and Dadakis became aware that Mrs. Liftin intended to apply for U.S. citizenship. Liftin Dep. 11:15–21; Dadakis Dep. 90:22–91:4. The Executor knew, however, that Mrs. Liftin's naturalization process might not be completed before the June 2, 2004 deadline. Liftin Dep. 16:15–18. Based on his interpretation of Treasury Regulation § 20.2056A-1(b),[3] Dadakis advised the Estate, in substance, that its late filing in order to claim the marital deduction would not trigger a penalty as long as the return was filed within a reasonable time after Mrs. Liftin became a naturalized U.S. citizen, *see, e.g.*, Liftin Dep. 20:4–9; Dadakis Decl. ¶¶ 12, 16, and other ancillary matters were completed, Liftin Decl. ¶¶ 4, 6, 7; Dadakis Decl. ¶ 17.[4] The Executor found this advice to be reasonable, particularly because the Estate had already paid more than the amount of tax the Executor believed would ultimately be due. Liftin Decl. ¶ 4; Liftin Dep. 20:19–21:7.

By June 2, 2004, Mrs. Liftin was not yet naturalized. *See* Cross-Mot. Ex. F (Mrs. Liftin's Certificate of Naturalization dated Aug. 3, 2005). Following Dadakis's advice, the Estate did not file a return before the extended deadline of June 2, 2004. On October 4, 2004, the IRS sent a letter to the Estate inquiring why it had not filed a tax return. Pl.'s Resps. DMF ¶ 30. In response, Dadakis wrote the IRS on November 4, 2004, setting forth the Estate's position, as well as his rationale for concluding that Treasury Regulation § 20.2056A-1(b) allowed a late filing in order to claim the marital deduction. Cross-Mot. Ex. E; *see also* Dadakis Decl. ¶ 14. Dadakis's letter did not, however, reference his advice that the Estate could wait to file its return until all ancillary matters were completed. *See* Cross-Mot. Ex. E. Neither the Estate nor Dadakis received a response from the IRS. Def.'s Resps. PMF 12.

---

[2] In the same document, the IRS informed the Estate that its request for an extension of time in which to pay had been forwarded to an IRS district officer "for further review." Cross-Mot. Ex. D, at 183.

[3] Treasury Regulation § 20.2056A-1(b) provides in relevant part:

> For purposes of section 2056(d)(4)(A) . . . , a return filed prior to the due date (including extensions) is considered filed on the last date that the return is required to be filed (including extensions), and a late return filed at any time after the due date is considered filed on the date that it is actually filed.

26 C.F.R. § 20.2056A-1(b).

[4] Neither Liftin nor Dadakis remembers the exact language of Dadakis's advice. Dadakis Dep. 59:5–16, 125:13–22; Liftin Dep. 19:18–21, 25:17–26:12. Dadakis confirmed to the Executor on multiple occasions, however, that the Estate's late-filed tax return would not trigger a penalty. *E.g.*, Liftin Decl. ¶ 4; Liftin Dep. 21:12–18.

On August 3, 2005, Mrs. Liftin became a U.S. citizen. Cross-Mot. Ex. F. In February of 2006, the Estate entered into an agreement settling Mrs. Liftin's claims against the Estate. Def.'s Resps. PMF 12–13.

On May 9, 2006, the Estate filed its tax return claiming the marital deduction in the amount of the value of the property passing to Mrs. Liftin and reflecting a tax due of $678,572.25 and an overpayment of $198,727.75. Def.'s Resps. PMF 17, 20. The IRS did not contest the marital deduction, but on June 12, 2006 the IRS issued a Notice of Adjustment reflecting a penalty of $169,643.06 for late filing and late payment pursuant to I.R.C. §§ 6651(a)(1) and 6651(a)(2). Def.'s Resps. PMF 20.

In 2006, the Estate filed a refund claim with the IRS, which the agency denied. *Id.* After an administrative appeal within the agency, the IRS granted a partial refund in the amount of $33,928.61, leaving a claim of $135,714.45. Def.'s Resps. PMF 21. In its administrative appeal, the Estate had argued that the statutes and regulations related to the marital deduction provided reasonable cause for the Estate's late filing:

> 5. By June 2, 2004 (the extended due date for filing Form 706), Mrs. Liftin had indicated that she would like to take advantage of the marital deduction by applying for U.S. citizenship. Under IRC § 2056(d)(4), the disallowance of the marital deduction under IRC § 2056(d)(1) (for property passing to a surviving spouse who is not a U.S. citizen "before the day on which the return of the tax imposed by this chapter is made . . . ." Further, Reg § 20.2056A-1(b) provides that for purposes of IRC § 2056(d)(4)(A), "a late return filed at any time after the due date is considered filed on the date that it is actually filed." Therefore until Mrs. Liftin became a U.S. citizen, the Estate could not file its Federal Estate Tax Return and still utilize the marital deduction under IRC § 2056. By the time citizenship would be granted to Mrs. Liftin, in order to have the marital deduction apply under IRC § 2056, the Estate could only file a late return.
>
> 6. On October 4, 2004, the Internal Revenue Service sent a letter to the Estate to determine why the Estate Tax Return had not been filed. My attorneys replied on November 4, 2004 . . . , stating that the return would not be filed until a determination was made as to Mrs. Liftin's citizenship.

Cross-Mot. Ex. A, at 7.

On September 1, 2010, the Estate filed a complaint in this court seeking a refund of $135,714.45 (docket entry 1). In January 2011, defendant filed a motion for judgment on the pleadings (docket entry 9, Jan. 14, 2011) pursuant to Rule 12(c) of the Rules of the Court of Federal Claims ("RCFC"). The Court denied defendant's motion. *Estate of Liftin v. United States*, 101 Fed. Cl. 604 (2011).

## II. Standard of Review

A moving party is entitled to summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). Thus, any doubt sufficient to create a genuine issue of material fact must be

resolved in favor of the party opposing summary judgment. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). When considering cross-motions for summary judgment, courts evaluate each motion on its own merits and deny both motions if there are any genuine disputes over material facts. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390–91 (Fed. Cir. 1987).

A fact is material if it affects the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is not genuine if, were the case to go to trial, no rational trier of fact could find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Accordingly, a party seeking summary judgment may demonstrate the absence of a genuine dispute by identifying a lack of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The Court's function, however, is "not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## III. Discussion

Section 6651(a)(1) imposes a penalty for failure to file a required return before the statutory or extended deadline unless the taxpayer can establish that such failure was due to reasonable cause and not willful neglect. I.R.C. § 6651(a)(1); *see also United States v. Boyle*, 469 U.S. 241, 244 (1985). The penalty imposes an addition to tax of 5 percent of the estate's tax liability for each month or any fraction thereof that the failure to file continues, but the penalty may not exceed 25 percent. I.R.C. § 6651(a)(1).

The Estate has demonstrated that its failure to file its estate tax return during the fourteen months after the extended deadline but before Mrs. Liftin became a U.S. citizen was due to reasonable cause and not willful neglect. Once Mrs. Liftin was naturalized, however, the Estate waited an additional nine months to file its estate tax return. Its delay in filing after Mrs. Liftin became a U.S. citizen was not due to reasonable cause. Therefore, for the reasons set forth below, the Court **DENIES** the Estate's motion for summary judgment and **GRANTS** the Government's cross-motion for summary judgment.

### *A. The Substantial Variance Doctrine Does Not Bar the Estate's Claim*

Defendant argues that the substantial variance rule divests the Court of jurisdiction over the Estate's claim. Under the substantial variance doctrine, "[a]ny legal theory not expressly or impliedly contained in the application for refund cannot be considered by a court in which a suit for refund is subsequently initiated." *Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000) (citations omitted) (quotation marks omitted). The substantial variance doctrine derives from I.R.C. § 7422(a), which prohibits any lawsuit "for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the Secretary or his delegate according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof." I.R.C. § 7422(a). Treasury Regulation § 301.6402-2(b)(1) states:

> No refund or credit will be allowed . . . except upon one or more of the grounds set forth in a claim filed . . . . The claim must set forth in detail each ground upon

> which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.

26 C.F.R. § 301.6402-2(b)(1). The doctrine applies to both the legal theories and factual bases for plaintiffs' claims. *Lockheed Martin*, 210 F.3d at 1371. The purpose of the statute and regulations is to provide notice to the IRS so that it may investigate and evaluate a taxpayer's claim before it is required to litigate the claim. *See id.* ("The substantial variance rule (1) gives the IRS notice as to the nature of the claim and the specific facts upon which it is predicated; (2) gives the IRS an opportunity to correct errors; and (3) limits any subsequent litigation to those grounds that the IRS had an opportunity to consider and is willing to defend."). Courts have interpreted the substantial variance doctrine to allow plaintiffs to litigate not only those claims specifically raised in the claim for refund, but also those "comprised within the general language of the claim." *Ottawa Silica*, 699 F.2d 1124, 1138 (Fed. Cir. 1983); *Parma v. United States*, 45 Fed. Cl. 124, 129 (1999).

Here, plaintiff's refund claim relied on the theory that the statutes and regulations related to the marital deduction created reasonable cause for plaintiff's late filing. But plaintiff's refund claim did not specifically argue that plaintiff had received legal advice that also constituted reasonable cause for plaintiff's late filing. Defendant asserts that plaintiff's variation in the presentation of its reasonable cause argument is sufficiently substantial to preclude the Court from exercising subject matter jurisdiction over plaintiff's claim.

The Estate has not varied the legal theory upon which it relies. The Estate has consistently asserted that its failure to file timely was due to reasonable cause and not willful neglect. The Estate continued to argue that theory in its refund claim and subsequent appeal within the IRS. Cross-Mot. Ex. A, at 7. The Estate's presentation of its legal theory here relies on an additional fact—that it was receiving advice from Dadakis—that was not necessary to its presentation before the IRS, but the Estate sufficiently alerted the IRS to that fact. The Estate, through Dadakis, first described its theory that its efforts to obtain the marital deduction created reasonable cause for late filing in its letter to the IRS in November 2004. *See* Cross-Mot. Ex. E. Thus, the IRS was on notice as early as 2004 that the Estate was relying on the advice of counsel. *See Parma*, 45 Fed. Cl. at 128 (citing *Davis v. United States*, 21 Cl. Ct. 84, 86 (1990)) ("The Court may inquire beyond the corners of a taxpayer's claim for refund. Other written communications to the IRS can also supply adequate notice to support litigation under section 7422."). As a result, both the Estate's legal theory and the factual basis for that theory were comprised within the general language of its administrative claim for refund.

Plaintiff's claim has relied on the same "reasonable cause" provision of § 6651 at every stage of this dispute. Plaintiff's presentation of its claim here is still based on its interpretation of the marital deduction provisions. Plaintiff's claims in this court do not therefore "substantially" vary from its presentation before the IRS. *Cf. Parma*, 45 Fed. Cl. at 129 (finding that a variation in the plaintiff's presentation of their statute of limitations argument was not so substantial as to violate the substantial variance doctrine); *see also Am. Nat. Bank & Trust Co. v. United States*, 594 F.2d 1141, 1143 n.1 (7th Cir. 1979) ("[T]here is substantial authority that [I.R.C. § 7422 and Treasury Regulation § 301.6402-2(b)(1)] do not require the strictness of common-law pleading or criminal indictment but only require that the statement of facts be reasonably sufficient to

make the Commissioner aware of the nature of the claims; the specific legal formulations of these claims need not be made.").

*B. The Estate's Reasonable Cause Defense Does Not Entitle It to a Refund of the Late-Filing Penalty Assessed*

To avoid a penalty for a late-filed return, the taxpayer bears the "heavy burden" of proving its failure to file timely was due to reasonable cause and not willful neglect. *Boyle*, 469 U.S. at 245 (citing I.R.C. § 6651(a)(1)). In order to prove "reasonable cause," a taxpayer must show that it "exercised 'ordinary business care and prudence' but nevertheless was 'unable to file the return within the prescribed time.'" *Id.* at 246 (quoting 26 C.F.R. § 301.6651(c)(1)). "Willful neglect" requires a "conscious, intentional failure or reckless indifference." *Id.* at 245.

In *Boyle*, the Supreme Court observed that "[c]ourts have differed over whether a taxpayer demonstrates 'reasonable cause' when, in reliance on the advice of his accountant or attorney, the taxpayer files a return after the actual due date but within the time the adviser erroneously told him was available." 469 U.S. at 251 n.9. The Court's decision in *Boyle* did not resolve those differences. *Id.* The Court did state, however, that:

> When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice. Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a "second opinion," or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place. "Ordinary business care and prudence" do not demand such actions.
>
> By contrast, one does not have to be a tax expert to know that tax returns have fixed filing dates and that taxes must be paid when they are due. In short, tax returns imply deadlines. Reliance by a lay person on a lawyer is of course common; but that reliance cannot function as a substitute for compliance with an unambiguous statute. Among the first duties of the representative of a decedent's estate is to identify and assemble the assets of the decedent and to ascertain tax obligations. Although it is common practice for an executor to engage a professional to prepare and file an estate tax return, a person experienced in business matters can perform that task personally. It is not unknown for an executor to prepare tax returns, take inventories, and carry out other significant steps in the probate of an estate. It is even not uncommon for an executor to conduct probate proceedings without counsel.

*Id.* at 251–52 (citation omitted). In short, the Supreme Court distinguished advice from an attorney involving an interpretation of substantive tax law, which can constitute reasonable cause, from an attorney's assistance in meeting the requirements of unambiguous statutes, which cannot constitute reasonable cause.

The Tax Court has since held that reasonable reliance on the erroneous advice of an attorney regarding the due date of a return can constitute reasonable cause. *Estate of La Meres v. Comm'r*, 98 T.C. 294, 320 (1992). The Tax Court attempted to categorize cases in which reliance on advice of counsel as to the appropriate time for filing can constitute reasonable cause for a late filing. *See id.* at 315–20. It noted that, in cases where the expert did not actually give the advice on which the taxpayer claimed to rely, the taxpayer could not establish reasonable cause. *Id.* at 316. Additionally, the taxpayer could not establish reasonable cause where the taxpayer's reliance on the advice was unreasonable—for example, when the advice did not come from an expert or where the taxpayer did not fully disclose all relevant information. *Id.* Thus, the Tax Court concluded that a taxpayer may demonstrate that its late filing was due to reasonable cause when (a) the taxpayer made full disclosure to an expert, (b) the expert gave advice upon which the taxpayer claims to have relied, (c) the taxpayer relied in good faith on the expert's advice, and (d) the taxpayer did not otherwise know that the return was due. *La Meres*, 98 T.C. at 315–18; *see also Liftin*, 101 Fed. Cl. at 608.[5]

1. Dadakis's Advice Constituted Reasonable Cause For the Estate to Delay Filing Until Mrs. Liftin Became a Citizen

Here, the Estate fully disclosed all relevant information to Dadakis, "an attorney with expertise in private wealth services and tax planning." *See* Def.'s Resps. PMF 3. Defendant argues, however, that Dadakis did not actually give the advice plaintiff claims and that the Executor did not rely in good faith on Dadakis's advice because the Executor knew the date on which the return was actually due.

a. Dadakis Advised the Estate Not to File a Return Until After Mrs. Liftin Became a Naturalized U.S. Citizen

Both Dadakis and the Executor assert that Dadakis advised the Executor "that a late-filed estate tax return would not trigger a late[-]filing penalty so long as the tax return was filed within a reasonable time after Mrs. Liftin became a naturalized United States citizen and after all ancillary matters were completed." *E.g.*, Dadakis Decl. ¶ 17; Liftin Decl. ¶ 4; *see* Dadakis Dep. 57:13–59:4; Liftin Dep. 20:4–9. In addition, Dadakis's November 2004 letter explained the Estate's reasoning for not filing using substantially the same language he asserts he used when he advised the Executor in 2003 and 2004. *See* Cross-Mot. Ex. E, at 184–85 (explaining his interpretation of I.R.C. § 2056(d)(4) and Treasury Regulation § 20.2056A-1(b) and stating the

[5] The Tax Court acknowledged that certain Eighth Circuit cases have held that the erroneous advice of counsel as to the date that the law required the taxpayer to file its return cannot constitute reasonable cause. *See Estate of Kerber v. United States*, 717 F.2d 454, 454 n.1, 455 (8th Cir. 1983) (per curiam); *Smith v. United States*, 702 F.2d 741, 742 (8th Cir. 1983). It traced those results to *Estate of Lillehei v. Comm'r*, 638 F.2d 65 (8th Cir. 1981). *La Meres*, 98 T.C. at 319. The taxpayer in *Lillehei* relied not on an expert's advice, but on an expert to complete the nondelegable duty of filing the return. *Id.* The Tax Court noted that *Boyle* distinguished reliance on expert advice from reliance on an expert to file a return, and, since the later Eighth Circuit cases had not addressed this distinction, the Tax Court found them to be superseded by *Boyle*. *Id.*

Estate "intends to delay the filing of its form 706 until Mrs. Liftin has obtained United States citizenship, such that those assets passing to her from the Decedent's estate will be eligible for the estate tax marital deduction").

Defendant responds only that neither the Executor nor Dadakis could recall Dadakis's precise words of advice. Cross-Mot. 49; *see also* Dadakis Dep. 59:5–16, 125:13–22; Liftin Dep. 19:18–21, 25:17–26:12. Defendant's argument, however, is insufficient to create a genuine issue of material fact regarding Dadakis's advice.

The Estate need not prove the exact words of Dadakis's advice in order to establish reasonable cause, therefore the exact wording of Dadakis's advice is not a material fact. Indeed, defendant does not cite case law, nor could the Court find any, that would require a taxpayer to prove the precise words of legal advice in order to demonstrate reasonable cause. Plaintiff need only show that Dadakis gave the advice in question, and that fact is not in genuine dispute. *See, e.g.*, Liftin Dep. 19:18–21 ("Q. Okay. And do you remember the exact words that he gave you? A. I could give you the substance but not the precise words.").

Defendant implies, however, that plaintiff is taking advantage of the lack of documentation of Dadakis's advice to shape the Executor's and Dadakis's memories of that advice to support plaintiff's litigation strategy. Cross-Mot. 49 ("Plaintiff has failed, however, to establish clear facts to prove that Dadakis *actually gave* the *specific* advice on which plaintiff claims reliance—as opposed to any post-hoc 'advice' that [the Executor] *interpreted* Dadakis as having given.") (emphasis added). To the extent the Government questions the credibility of Dadakis or the Executor or the statements in their declarations, "[d]efendant must present sufficient evidence to support its contention that an issue of credibility exists." *Olszonicki v. United States*, 867 F. Supp. 610, 615 (N.D. Ohio 1994). Defendant has provided no such evidence. Given the lack of evidence to support defendant's conclusion, its argument is insufficient to create a genuine dispute regarding the substance of Dadakis's advice. *See Celotex*, 477 U.S. at 325.[6]

b. The Estate Reasonably Relied on Dadakis's Advice Regarding Waiting to File Until After Mrs. Liftin Became a U.S. Citizen

Defendant argues that the Estate's reliance on Dadakis's advice was unreasonable because the Executor was aware of the statutory due date for filing the Estate's return. Cross-Mot. 42–48. But defendant's argument relies on a misrepresentation of the Executor's testimony.

---

[6] It is unclear whether Dadakis advised the Executor that he *should* wait to file or that he *must* wait to file. *Cf.* Dadakis Decl. ¶¶ 12, 16–17. Defendant argues that Dadakis "never advised the Executor that 'the law required' him to wait to file the estate tax return," and that if that had been Dadakis's advice "it would have been simple for those lawyers [Dadakis and the Executor] to [so] swear in their declarations." Reply 8–11. Whether Dadakis advised that the Estate must, or merely should, wait to file its return is, however, not a material fact. To establish reasonable cause for late filing, it is sufficient that Dadakis advised that the Estate *could* file with no penalty.

The relevant facts are not in genuine dispute. The Executor was aware that the original statutory due date for filing the Estate's return was December 2, 2003. Liftin Dep. 10:5–8. He was also aware that the IRS approved the Estate's request to extend that deadline until June 2, 2004. Liftin Dep. 14:22–15:3. However, as a result of the advice from Dadakis, Liftin understood the statutory deadline to apply only in the case where there was no reasonable cause to file after that date. Liftin Dep. 16:1–3. In particular, Dadakis advised the Executor that the circumstances the Estate faced—the inability to claim the marital deduction pursuant to I.R.C. § 2056 until after the statutory due date for filing the return—constituted reasonable cause such that the Estate would not be penalized for delayed filing. Liftin Decl. ¶¶ 4, 6–7; Liftin Dep. 20:4–16, 25:13–20. Thus, the Executor knew that the statutory deadlines existed, but believed that they did not apply to the Estate based on advice from Dadakis. *See* Liftin Dep. 19:14–17.[7]

In *La Meres*, the Tax Court stated that a taxpayer's reliance on the advice of counsel could not be reasonable cause for late filing when the taxpayer "otherwise kn[e]w that the return was due." 98 T.C. at 316–17. The Tax Court was describing a category of cases in which taxpayers claimed they failed to timely file returns because the taxpayers relied on an expert's advice that no penalty would be assessed because "no tax liability existed upon which the addition to tax is computed." *Id.* at 316. In those cases, the expert did not give "erroneous advice concerning the proper filing date." *Id.* Since Dadakis gave erroneous advice concerning the proper filing date, this case is not one in which the taxpayer otherwise knew that the return was due.

The undisputed facts establish that the Executor's reliance on Dadakis's erroneous advice was reasonable.[8] Dadakis's advice concerned a substantive question of tax law regarding the interaction between the statutes and regulations providing for the marital deduction and the statutes and regulations setting the deadline for filing the Estate's return. The Executor had no basis to question Dadakis's advice. Liftin Dep. 21:1–7. As the circumstances changed, the Executor continued to ask whether the Estate needed to file sooner, and Dadakis continued to reassure him that the Estate could wait until Mrs. Liftin became a citizen. Liftin Dep. 21:12–19.

---

[7] Defendant also asserts that Dadakis's advice was incorrect. Cross-Mot. 39–41. By describing in detail the reasons Dadakis's advice was incorrect, defendant implies that "reliance on advice from [the Estate's] attorney was not reasonable because [plaintiff] should have known that the advice was erroneous and should have conducted independent research to verify it." *La Meres*, 98 T.C. at 313. Of course, the principle that reliance on expert advice can constitute reasonable cause is only relevant in cases in which a taxpayer relies on incorrect advice. If Dadakis's advice had been correct, and the marital deduction statutes and regulations created reasonable cause for late filing, there would be no need to address whether Dadakis's advice created an independent basis for late filing because the IRS would not have assessed a penalty. Accordingly, *La Meres* holds "that reasonable reliance on the *erroneous* advice of an attorney with respect to the due date of a return can constitute 'reasonable cause' within the meaning of section 6651(a)(1)." *La Meres*, 98 T.C. at 320 (emphasis added).

[8] Whether the elements that constitute "reasonable cause" are present in a given situation is a question of fact, but what elements must be present to constitute "reasonable cause" is a question of law. *Boyle*, 469 U.S. at 249. Here, the elements present are not in genuine dispute.

Moreover, there is no evidence to suggest that the Executor was acting in bad faith. Therefore requiring the Executor to challenge Dadakis would "nullify the very purpose of seeking [his expert advice] in the first place." *See Boyle*, 469 U.S. at 251.

2. Dadakis's Advice Did Not Constitute Reasonable Cause For the Estate to Delay Filing Until All "Ancillary Matters" Were Concluded

In addition to his advice that the marital deduction statutes and regulations created reasonable cause for the Estate to delay filing, Dadakis also advised the Estate that it could delay filing until all ancillary matters were completed. Dadakis Decl. ¶ 17; Liftin Decl. ¶ 4. Dadakis based this advice on his belief that the Estate should wait to file until the Estate had sufficient information to file an "accurate" return.[9] Dadakis Dep. 98:8–18 ("The need to file a federal estate tax return is also the need to file an accurate federal estate tax return. And, therefore, the discussions that we had with John Liftin, especially since we were aware that a refund was due, entailed the idea that we would file a -- the federal estate tax return subsequent to the naturalization of the surviving spouse. And all of the other ancillary information that we needed could be deduced, and then taking time to prepare an accurate federal estate tax return.").[10] As a result, the Estate did not file until it had settled with Mrs. Liftin and Dadakis had prepared a complete and correct return, a process beginning in August of 2005 and ending in May 2006, with the filing of the Estate's tax return. *See* Dadakis Dep. 137:14–16.

Because Dadakis's advice that the Estate could delay filing until it could submit an accurate return was not an interpretation of substantive tax law, it cannot, as a matter of law, constitute reasonable cause for the delay in filing the estate tax return. *See Estate of Young v. United States*, No. 11-11829, 2012 WL 6585327, at *3 (D. Mass. Dec. 17, 2012) ("[T]he Estate had an obligation to file a timely return with the best available information. It cannot claim reasonable cause based on advice that it was necessary to wait for complete information before filing a return."); *Russell v. Comm'r*, 101 T.C.M. (CCH) 1363, at *8 (2011) ("[R]eliance on an

---

[9] Dadakis does not explain how he reached this conclusion, and the law is clear that the need to file an accurate return cannot constitute reasonable cause for late filing. *See, e.g.*, *Randall v. Comm'r*, 74 T.C.M. (CCH) 258, at *3 n.5 (1997) ("Under petitioner's position, as long as a taxpayer did not have all of the information that was needed to prepare a complete, and therefore accurate, return, he or she will never have to file a return and yet will not be liable for the addition to tax under [§] 6651(a)(1). We disagree."); *see also In re Craddock*, 149 F.3d 1249, 1257 (10th Cir. 1998) ("A tax return does not have to be completely accurate, but must be based on the best information available, . . . and may be amended later if necessary.") (citing *Oliver v. Comm'r*, 73 T.C.M. (CCH) 2035, 2051, 1997 WL 66769 (1997); *Estate of Vriniotis v. Comm'r*, 79 T.C. 298, 311, 1982 WL 11136 (1982)).

[10] Dadakis concluded that proceeding in this manner would be "administratively efficient." Cross-Mot. Ex. A, at 7 n.2.

attorney's advice that it was necessary to wait for complete information before filing a return does not constitute reasonable cause for a delay in filing.").

## CONCLUSION

The Estate relied on its attorney's advice regarding the deadline to file its tax return such that its failure to file until after Mrs. Liftin became a naturalized United States citizen was due to reasonable cause. However, the Estate did not have reasonable cause to further delay its filing. The Estate filed its estate tax return on May 26, 2006—nine months after Mrs. Liftin became a naturalized U.S. citizen in August of 2005. The addition to tax for failure to file timely reaches the statutory maximum if the delinquency continues longer than four months. *E.g.*, *Russell*, 101 T.C.M. at *8 (citing I.R.C. § 6651(a)). Therefore, plaintiff's nine-month delay without reasonable cause was sufficient to subject plaintiff to the maximum late-filing penalty. The Court therefore **DENIES** plaintiff's motion for summary judgment and **GRANTS** defendant's cross-motion for summary judgment.

The Clerk is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

s/ George W. Miller
GEORGE W. MILLER
Judge

# In the United States Court of Federal Claims

**No. 10-589 T**

**THE ESTATE OF MORTON LIFTIN,**
**JOHN LIFTIN, EXECUTOR**

**JUDGMENT**

**v.**

**THE UNITED STATES**

Pursuant to the court's Opinion and Order, filed March 29, 2013, granting defendant's motion for summary judgment,

IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that judgment is entered in favor of defendant.

Hazel C. Keahey
Clerk of Court

**April 3, 2013** By: s/ Debra L. Samler

Deputy Clerk

<u>NOTE</u>: As to appeal, 60 days from this date, see RCFC 58.1, re number of copies and listing of <u>all plaintiffs</u>. Filing fee is $455.00.

United States Code Annotated
Title 26. Internal Revenue Code (Refs & Annos)
Subtitle F. Procedure and Administration (Refs & Annos)
Chapter 68. Additions to the Tax, Additional Amounts, and Assessable Penalties
Subchapter A. Additions to the Tax and Additional Amounts
Part I. General Provisions (Refs & Annos)

26 U.S.C.A. § 6651

§ 6651. Failure to file tax return or to pay tax

Effective: June 17, 2008
Currentness

**(a) Addition to the tax.**--In case of failure--

**(1)** to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), subchapter A of chapter 51 (relating to distilled spirits, wines, and beer), or of subchapter A of chapter 52 (relating to tobacco, cigars, cigarettes, and cigarette papers and tubes), or of subchapter A of chapter 53 (relating to machine guns and certain other firearms), on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate;

**(2)** to pay the amount shown as tax on any return specified in paragraph (1) on or before the date prescribed for payment of such tax (determined with regard to any extension of time for payment), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount shown as tax on such return 0.5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 0.5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate; or

**(3)** to pay any amount in respect of any tax required to be shown on a return specified in paragraph (1) which is not so shown (including an assessment made pursuant to section 6213(b)) within 21 calendar days from the date of notice and demand therefor (10 business days if the amount for which such notice and demand is made equals or exceeds $100,000), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount of tax stated in such notice and demand 0.5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 0.5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.

In the case of a failure to file a return of tax imposed by chapter 1 within 60 days of the date prescribed for filing of such return (determined with regard to any extensions of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, the addition to tax under paragraph (1) shall not be less than the lesser of $135 or 100 percent of the amount required to be shown as tax on such return.

**(b) Penalty imposed on net amount due.**--For purposes of--

WestlawNext © 2013 Thomson Reuters. No claim to original U.S. Government Works. 

**(1)** subsection (a)(1), the amount of tax required to be shown on the return shall be reduced by the amount of any part of the tax which is paid on or before the date prescribed for payment of the tax and by the amount of any credit against the tax which may be claimed on the return,

**(2)** subsection (a)(2), the amount of tax shown on the return shall, for purposes of computing the addition for any month, be reduced by the amount of any part of the tax which is paid on or before the beginning of such month and by the amount of any credit against the tax which may be claimed on the return, and

**(3)** subsection (a)(3), the amount of tax stated in the notice and demand shall, for the purpose of computing the addition for any month, be reduced by the amount of any part of the tax which is paid before the beginning of such month.

**(c) Limitations and special rule.--**

**(1) Additions under more than one paragraph.**--With respect to any return, the amount of the addition under paragraph (1) of subsection (a) shall be reduced by the amount of the addition under paragraph (2) of subsection (a) for any month (or fraction thereof) to which an addition to tax applies under both paragraphs (1) and (2). In any case described in the last sentence of subsection (a), the amount of the addition under paragraph (1) of subsection (a) shall not be reduced under the preceding sentence below the amount provided in such last sentence.

**(2) Amount of tax shown more than amount required to be shown.**--If the amount required to be shown as tax on a return is less than the amount shown as tax on such return, subsections (a)(2) and (b)(2) shall be applied by substituting such lower amount.

**(d) Increase in penalty for failure to pay tax in certain cases.--**

**(1) In general.**--In the case of each month (or fraction thereof) beginning after the day described in paragraph (2) of this subsection, paragraphs (2) and (3) of subsection (a) shall be applied by substituting "1 percent" for "0.5 percent" each place it appears.

**(2) Description.**--For purposes of paragraph (1), the day described in this paragraph is the earlier of--

**(A)** the day 10 days after the date on which notice is given under section 6331(d), or

**(B)** the day on which notice and demand for immediate payment is given under the last sentence of section 6331(a).

**(e) Exception for estimated tax.**--This section shall not apply to any failure to pay any estimated tax required to be paid by section 6654 or 6655.

**(f) Increase in penalty for fraudulent failure to file.**--If any failure to file any return is fraudulent, paragraph (1) of subsection (a) shall be applied--

**(1)** by substituting "15 percent" for "5 percent" each place it appears, and

**(2)** by substituting "75 percent" for "25 percent".

**(g) Treatment of returns prepared by Secretary under section 6020(b).**--In the case of any return made by the Secretary under section 6020(b)--

**(1)** such return shall be disregarded for purposes of determining the amount of the addition under paragraph (1) of subsection (a), but

**(2)** such return shall be treated as the return filed by the taxpayer for purposes of determining the amount of the addition under paragraphs (2) and (3) of subsection (a).

**(h) Limitation on penalty on individual's failure to pay for months during period of installment agreement.**--In the case of an individual who files a return of tax on or before the due date for the return (including extensions), paragraphs (2) and (3) of subsection (a) shall each be applied by substituting "0.25" for "0.5" each place it appears for purposes of determining the addition to tax for any month during which an installment agreement under section 6159 is in effect for the payment of such tax.

**CREDIT(S)**

(Aug. 16, 1954, c. 736, 68A Stat. 821; June 28, 1968, Pub.L. 90-364, Title I, § 103(e)(4), 82 Stat. 264; Dec. 30, 1969, Pub.L. 91-172, Title IX, § 943(a), 83 Stat. 727; Apr. 1, 1971, Pub.L. 92-9, § 3(j)(1), 85 Stat. 22; Oct. 4, 1976, Pub.L. 94-455, Title XIX, § 1904(b)(10)(A)(v), 90 Stat. 1817; Sept. 3, 1982, Pub.L. 97-248, Title III, § 318(a), (b), 96 Stat. 610; July 18, 1984, Pub.L. 98-369, Div. A, Title IV, § 412(b)(8), 98 Stat. 792; Oct. 22, 1986, Pub.L. 99-514, Title XV, § 1502(a), (b), 100 Stat. 2741; Dec. 22, 1987, Pub.L. 100-203, Title X, § 10301(b)(6), 101 Stat. 1330-429; Dec. 19, 1989, Pub.L. 101-239, Title VII, § 7741(a), 103 Stat. 2404; July 30, 1996, Pub.L. 104-168, Title III, § 303(b)(2), Title XIII, § 1301(a), 110 Stat. 1458, 1475; July 22, 1998, Pub.L. 105-206, Title III, § 3303(a), 112 Stat. 742; June 17, 2008, Pub.L. 110-245, Title III, § 303(a), 122 Stat. 1649.)

**LAW REVIEW COMMENTARIES**

Consequences of failing to file N.Y. tax returns. Carlton M. Smith and Glenn Newman, 213 N.Y.L.J. 1 (Feb. 28, 1995).
Explosion of penalties. John J. Tigue Jr. and Linda A. Lacewell, 213 N.Y.L.J. 3 (May 18, 1995).
Federal taxation of community income: A simpler and more equitable approach. Susan Kalinka, 1990 Wis.L.Rev. 633 (1990).
Individual tax claims in Chapter 7 and 13 bankruptcies: Administrative priorities and dischargeability. Patrick M. Castleberry, 47 Consumer Fin.L.Q.Rep. 433 (1993).
The narrowed reasonable cause standard in section 6651(a)(2): *Estate of Hartsell v. Commissioner*. Mark Roche, 59 Tax Law. 297 (2005).
Penalty for late filed tax returns. Marilyn E. Brookens, 35 Case W.Res.L.Rev. 183 (1984-85).
Reliance on counsel as reasonable cause: To the back burner after *Boyle?* Malcolm L. Morris, 31 Vill.L.Rev. 525 (1986).

**LIBRARY REFERENCES**

**American Digest System**

Internal Revenue ⟜5217, 5217.60.
Key Number System Topic No. 220.

**Corpus Juris Secundum**

CJS Internal Revenue § 436, Special Rules for Credits and Deductions.

United States Code Annotated
Title 26. Internal Revenue Code (Refs & Annos)
Subtitle F. Procedure and Administration (Refs & Annos)
Chapter 61. Information and Returns
Subchapter A. Returns and Records (Refs & Annos)
Part V. Time for Filing Returns and Other Documents

26 U.S.C.A. § 6075

§ 6075. Time for filing estate and gift tax returns

Effective: December 17, 2010
Currentness

**(a) Estate tax returns.**--Returns made under section 6018(a) (relating to estate taxes) shall be filed within 9 months after the date of the decedent's death.

**(b) Gift tax returns.**--

**(1) General rule.**--Returns made under section 6019 (relating to gift taxes) shall be filed on or before the 15th day of April following the close of the calendar year.

**(2) Extension where taxpayer granted extension for filing income tax return.**--Any extension of time granted the taxpayer for filing the return of income taxes imposed by subtitle A for any taxable year which is a calendar year shall be deemed to be also an extension of time granted the taxpayer for filing the return under section 6019 for such calendar year.

**(3) Coordination with due date for estate tax return.**--Notwithstanding paragraphs (1) and (2), the time for filing the return made under section 6019 for the calendar year which includes the date of death of the donor shall not be later than the time (including extensions) for filing the return made under section 6018 (relating to estate tax returns) with respect to such donor.

**CREDIT(S)**

(Aug. 16, 1954, c. 736, 68A Stat. 751; Dec. 31, 1970, Pub.L. 91-614, Title I, §§ 101(b), 102(d) (4), 84 Stat. 1836, 1842; Oct. 4, 1976, Pub.L. 94-455, Title XX, § 2008(b), 90 Stat. 1892; Dec. 29, 1979, Pub.L. 96-167, § 8(a) to (c), 93 Stat. 1277, 1278; Aug. 13, 1981, Pub. L. 97-34, Title IV, § 442(d)(3), 95 Stat. 322; June 7, 2001, Pub.L. 107-16, Title V, § 542(b)(3), 115 Stat. 83; Dec. 17, 2010, Pub.L. 111-312, Title III, § 301(a), 124 Stat. 3300.)

**LAW REVIEW COMMENTARIES**

Basic federal estate and gift taxation. Larry W. Gibbs, 17 St.Mary's L.J. 809 (1986).
Generation Skipping Transfer Tax: Questions and answers for the estate planner. Michael E. O'Connor, 66 N.Y.St.B.J. 20 (March/April 1994).
Modern-day equitable recoupment and the "two tax effect:" Avoidance of the statutes of limitation in federal tax controversies. Arthur W. Andrews, 28 Ariz.L.Rev. 594 (1986).
The unified credit: Tax plans and family ties. Carolyn Burgess Featheringill, 16 Cumb.L.Rev. 517 (1985-1986).

**LIBRARY REFERENCES**

**American Digest System**

United States Code Annotated
Title 26. Internal Revenue Code (Refs & Annos)
Subtitle B. Estate and Gift Taxes (Refs & Annos)
Chapter 11. Estate Tax (Refs & Annos)
Subchapter A. Estates of Citizens or Residents
Part IV. Taxable Estate

26 U.S.C.A. § 2056

§ 2056. Bequests, etc., to surviving spouse

Effective: August 5, 1997
Currentness

**(a) Allowance of marital deduction.**--For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsection (b), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

**(b) Limitation in the case of life estate or other terminable interest.**--

**(1) General rule.**--Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest--

**(A)** if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

**(B)** if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse;

and no deduction shall be allowed with respect to such interest (even if such deduction is not disallowed under subparagraphs (A) and (B))--

**(C)** if such interest is to be acquired for the surviving spouse, pursuant to directions of the decedent, by his executor or by the trustee of a trust.

For purposes of this paragraph, an interest shall not be considered as an interest which will terminate or fail merely because it is the ownership of a bond, note, or similar contractual obligation, the discharge of which would not have the effect of an annuity for life or for a term.

**(2) Interest in unidentified assets.**--Where the assets (included in the decedent's gross estate) out of which, or the proceeds of which, an interest passing to the surviving spouse may be satisfied include a particular asset or assets with respect to which

WestlawNext © 2013 Thomson Reuters. No claim to original U.S. Government Works. 

no deduction would be allowed if such asset or assets passed from the decedent to such spouse, then the value of such interest passing to such spouse shall, for purposes of subsection (a), be reduced by the aggregate value of such particular assets.

**(3) Interest of spouse conditional on survival for limited period.**--For purposes of this subsection, an interest passing to the surviving spouse shall not be considered as an interest which will terminate or fail on the death of such spouse if--

**(A)** such death will cause a termination or failure of such interest only if it occurs within a period not exceeding 6 months after the decedent's death, or only if it occurs as a result of a common disaster resulting in the death of the decedent and the surviving spouse, or only if it occurs in the case of either such event; and

**(B)** such termination or failure does not in fact occur.

**(4) Valuation of interest passing to surviving spouse.**--In determining for purposes of subsection (a) the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this section--

**(A)** there shall be taken into account the effect which the tax imposed by section 2001, or any estate, succession, legacy, or inheritance tax, has on the net value to the surviving spouse of such interest; and

**(B)** where such interest or property is encumbered in any manner, or where the surviving spouse incurs any obligation imposed by the decedent with respect to the passing of such interest, such encumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined.

**(5) Life estate with power of appointment in surviving spouse.**--In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse--

**(A)** the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and

**(B)** no part of the interest so passing shall, for purposes of paragraph (1)(A), be considered as passing to any person other than the surviving spouse.

This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

**(6) Life insurance or annuity payments with power of appointment in surviving spouse.**--In the case of an interest in property passing from the decedent consisting of proceeds under a life insurance, endowment, or annuity contract, if under the terms of the contract such proceeds are payable in installments or are held by the insurer subject to an agreement to pay interest thereon (whether the proceeds, on the termination of any interest payments, are payable in a lump sum or in annual

or more frequent installments), and such installment or interest payments are payable annually or at more frequent intervals, commencing not later than 13 months after the decedent's death, and all amounts, or a specific portion of all such amounts, payable during the life of the surviving spouse are payable only to such spouse, and such spouse has the power to appoint all amounts, or such specific portion, payable under such contract (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), with no power in any other person to appoint such amounts to any person other than the surviving spouse--

**(A)** such amounts shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and

**(B)** no part of such amounts shall, for purposes of paragraph (1)(A), be considered as passing to any person other than the surviving spouse.

This paragraph shall apply only if, under the terms of the contract, such power in the surviving spouse to appoint such amounts, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

**(7) Election with respect to life estate for surviving spouse.--**

**(A) In general.**--In the case of qualified terminable interest property--

**(i)** for purposes of subsection (a), such property shall be treated as passing to the surviving spouse, and

**(ii)** for purposes of paragraph (1)(A), no part of such property shall be treated as passing to any person other than the surviving spouse.

**(B) Qualified terminable interest property defined.**--For purposes of this paragraph--

**(i) In general.**--The term "qualified terminable interest property" means property--

**(I)** which passes from the decedent,

**(II)** in which the surviving spouse has a qualifying income interest for life, and

**(III)** to which an election under this paragraph applies.

**(ii) Qualifying income interest for life.**--The surviving spouse has a qualifying income interest for life if--

**(I)** the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, or has a usufruct interest for life in the property, and

WestlawNext © 2013 Thomson Reuters. No claim to original U.S. Government Works.

**(II)** no person has a power to appoint any part of the property to any person other than the surviving spouse.

Subclause (II) shall not apply to a power exercisable only at or after the death of the surviving spouse. To the extent provided in regulations, an annuity shall be treated in a manner similar to an income interest in property (regardless of whether the property from which the annuity is payable can be separately identified).

**(iii) Property includes interest therein.**--The term "property" includes an interest in property.

**(iv) Specific portion treated as separate property.**--A specific portion of property shall be treated as separate property.

**(v) Election.**--An election under this paragraph with respect to any property shall be made by the executor on the return of tax imposed by section 2001. Such an election, once made, shall be irrevocable.

**(C) Treatment of survivor annuities.**--In the case of an annuity included in the gross estate of the decedent under section 2039 (or, in the case of an interest in an annuity arising under the community property laws of a State, included in the gross estate of the decedent under section 2033) where only the surviving spouse has the right to receive payments before the death of such surviving spouse--

**(i)** the interest of such surviving spouse shall be treated as a qualifying income interest for life, and

**(ii)** the executor shall be treated as having made an election under this subsection with respect to such annuity unless the executor otherwise elects on the return of tax imposed by section 2001.

An election under clause (ii), once made, shall be irrevocable.

**(8) Special rule for charitable remainder trusts.--**

**(A) In general.**--If the surviving spouse of the decedent is the only beneficiary of a qualified charitable remainder trust who is not a charitable beneficiary nor an ESOP beneficiary, paragraph (1) shall not apply to any interest in such trust which passes or has passed from the decedent to such surviving spouse.

**(B) Definitions.**--For purposes of subparagraph (A)--

**(i) Charitable beneficiary.**--The term "charitable beneficiary" means any beneficiary which is an organization described in section 170(c).

**(ii) ESOP beneficiary.**--The term "ESOP beneficiary" means any beneficiary which is an employee stock ownership plan (as defined in section 4975(e)(7)) that holds a remainder interest in qualified employer securities (as defined in section 664(g)(4)) to be transferred to such plan in a qualified gratuitous transfer (as defined in section 664(g)(1)).

WestlawNext © 2013 Thomson Reuters. No claim to original U.S. Government Works.

**(iii) Qualified charitable remainder trust.**--The term "qualified charitable remainder trust" means a charitable remainder annuity trust or a charitable remainder unitrust (described in section 664).

**(9) Denial of double deduction.**--Nothing in this section or any other provision of this chapter shall allow the value of any interest in property to be deducted under this chapter more than once with respect to the same decedent.

**(10) Specific portion.**--For purposes of paragraphs (5), (6), and (7)(B)(iv), the term "specific portion" only includes a portion determined on a fractional or percentage basis.

**(c) Definition.**--For purposes of this section, an interest in property shall be considered as passing from the decedent to any person if and only if--

**(1)** such interest is bequeathed or devised to such person by the decedent;

**(2)** such interest is inherited by such person from the decedent;

**(3)** such interest is the dower or curtesy interest (or statutory interest in lieu thereof) of such person as surviving spouse of the decedent;

**(4)** such interest has been transferred to such person by the decedent at any time;

**(5)** such interest was, at the time of the decedent's death, held by such person and the decedent (or by them and any other person) in joint ownership with right of survivorship;

**(6)** the decedent had a power (either alone or in conjunction with any person) to appoint such interest and if he appoints or has appointed such interest to such person, or if such person takes such interest in default on the release or nonexercise of such power; or

**(7)** such interest consists of proceeds of insurance on the life of the decedent receivable by such person.

Except as provided in paragraph (5) or (6) of subsection (b), where at the time of the decedent's death it is not possible to ascertain the particular person or persons to whom an interest in property may pass from the decedent, such interest shall, for purposes of subparagraphs (A) and (B) of subsection (b)(1), be considered as passing from the decedent to a person other than the surviving spouse.

**(d) Disallowance of marital deduction where surviving spouse not United States citizen.--**

**(1) In general.**--Except as provided in paragraph (2), if the surviving spouse of the decedent is not a citizen of the United States--

**(A)** no deduction shall be allowed under subsection (a), and

**(B)** section 2040(b) shall not apply.

**(2) Marital deduction allowed for certain transfers in trust.**--

**(A) In general.**--Paragraph (1) shall not apply to any property passing to the surviving spouse in a qualified domestic trust.

**(B) Special rule.**--If any property passes from the decedent to the surviving spouse of the decedent, for purposes of subparagraph (A), such property shall be treated as passing to such spouse in a qualified domestic trust if--

**(i)** such property is transferred to such a trust before the date on which the return of the tax imposed by this chapter is made, or

**(ii)** such property is irrevocably assigned to such a trust under an irrevocable assignment made on or before such date which is enforceable under local law.

**(3) Allowance of credit to certain spouses.**--If--

**(A)** property passes to the surviving spouse of the decedent (hereinafter in this paragraph referred to as the "first decedent"),

**(B)** without regard to this subsection, a deduction would be allowable under subsection (a) with respect to such property, and

**(C)** such surviving spouse dies and the estate of such surviving spouse is subject to the tax imposed by this chapter,

the Federal estate tax paid (or treated as paid under section 2056A(b)(7)) by the first decedent with respect to such property shall be allowed as a credit under section 2013 to the estate of such surviving spouse and the amount of such credit shall be determined under such section without regard to when the first decedent died and without regard to subsection (d)(3) of such section.

**(4) Special rule where resident spouse becomes citizen.**--Paragraph (1) shall not apply if--

**(A)** the surviving spouse of the decedent becomes a citizen of the United States before the day on which the return of the tax imposed by this chapter is made, and

**(B)** such spouse was a resident of the United States at all times after the date of the death of the decedent and before becoming a citizen of the United States.

**(5) Reformations permitted.**

**(A) In general.**--In the case of any property with respect to which a deduction would be allowable under subsection (a) but for this subsection, the determination of whether a trust is a qualified domestic trust shall be made--

**(i)** as of the date on which the return of the tax imposed by this chapter is made, or

**(ii)** if a judicial proceeding is commenced on or before the due date (determined with regard to extensions) for filing such return to change such trust into a trust which is a qualified domestic trust, as of the time when the changes pursuant to such proceeding are made.

**(B) Statute of limitations.**--If a judicial proceeding described in subparagraph (A)(ii) is commenced with respect to any trust, the period for assessing any deficiency of tax attributable to any failure of such trust to be a qualified domestic trust shall not expire before the date 1 year after the date on which the Secretary is notified that the trust has been changed pursuant to such judicial proceeding or that such proceeding has been terminated.

**CREDIT(S)**

(Aug. 16, 1954, c. 736, 68A Stat. 392; Oct. 4, 1966, Pub.L. 89-621, § 1(a), 80 Stat. 872; Oct. 4, 1976, Pub.L. 94-455, Title XIX, § 1902(a)(12)(A), Title XX, §§ 2002(a), 2009(b)(4)(D), (E), 90 Stat. 1805, 1854, 1894; Nov. 6, 1978, Pub.L. 95-600, Title VII, § 702(g)(1), (2), 92 Stat. 2930; Aug. 13, 1981, Pub.L. 97-34, Title IV, § 403(a)(1), (d)(1), 95 Stat. 301, 302; Jan. 12, 1983, Pub.L. 97-448, Title I, § 104(a)(2)(A), (8), 96 Stat. 2380, 2381; July 18, 1984, Pub.L. 98-369, Div. A, Title X, § 1027(a), 98 Stat. 1031; Nov. 10, 1988, Pub.L. 100-647, Title V, § 5033(a)(1), Title VI, § 6152(a), 102 Stat. 3670, 3725; Dec. 19, 1989, Pub.L. 101-239, Title VII, §§ 7815(d)(4)(A), (5), (6), (8), 7816(q), 103 Stat. 2415, 2416, 2423; Nov. 5, 1990, Pub.L. 101-508, Title XI, §§ 11701(l)(1), 11702(g)(5), 104 Stat. 1388-513, 1388-516; Oct. 24, 1992, Pub.L. 102-486, Title XIX, § 1941(a), 106 Stat. 3036; Aug. 5, 1997, Pub.L. 105-34, Title XIII, § 1311(a), Title XV, § 1530(c)(8), 111 Stat. 1044, 1078.)

**LAW REVIEW COMMENTARIES**

Another look at income shifting: The qualified subchapter S trust. John J. Buttita, 66 Chi.B.Rec. 194 (Jan.-Feb.1985).

A second chance? Evaluating an inter vivos transfer after a failed QTIP election: Wells Fargo Bank New Mexico v. United States. Note, 57 Tax Law. 605 (2004).

Can a State's marital deduction savings clause reform a defective marital deduction? Estate of Davis v. Commissioner. Note, 57 Tax Law. 615 (2004).

Charitable planning with retirement benefits: Weighing the alternatives. Roger L. Shumaker and Michael G. Riley, 9 Prob. & Prop. 56 (March/April 1995).

Curing defective QTIP elections. Kathleen Ford Bay, 52 Tex.B.J. 754 (1989).

Estate and income tax planning for retirement plans and IRAs. Gair Bennett Petrie, 32 Idaho L.Rev. 253 (1996).

*Estate of Shelfer v. Commissioner of Internal Revenue:* Is the Tax Court's position on QTIPs "stub"born or justified? 48 Ark.L.Rev. 987 (1995).

Estate planner's dilemma: Reconciling legal, ethical and moral responsibilities. Louie N. Adcock, Jr., and Laurie W. Valentine, 60 Fla.B.J. 51 (1986).

Estate planning: Application of Wisconsin Marital Property Act. Joseph E. Tierney, Jr. and Scott D. Gerardin. 68 Marq.L.Rev. 470 (1985).

Estate planning ramifications of the unlimited succession tax marital exemption: § 2056(b)5 revisited. Michael A. Neufeld, 2 Conn.Prob.L.J. 199 (1987).

Estate planning under the Economic Recovery Act. (January 1982) 4 L.A.Law. 12.

WestlawNext © 2013 Thomson Reuters. No claim to original U.S. Government Works. 

Code of Federal Regulations
Title 26. Internal Revenue
Chapter I. Internal Revenue Service, Department of the Treasury
Subchapter F. Procedure and Administration
Part 301. Procedure and Administration (Refs & Annos)
Additions to the Tax, Additional Amounts, and Assessable Penalties
Additions to the Tax and Additional Amounts

26 C.F.R. § 301.6651–1, Treas. Reg. § 301.6651–1

§ 301.6651–1 Failure to file tax return or to pay tax.

Currentness

**(a) Addition to the tax--(1) Failure to file tax return.** In case of failure to file a return required under authority of--

**(i)** Subchapter A, chapter 61 of the Code, relating to returns and records (other than sections 6015 and 6016, relating to declarations of estimated tax, and part III thereof, relating to information returns);

**(ii)** Subchapter A, chapter 51 of the Code, relating to distilled spirits, wines, and beer;

**(iii)** Subchapter A, chapter 52 of the Code, relating to cigars, cigarettes, and cigarette papers and tubes; or

**(iv)** Subchapter A, chapter 53 of the Code, relating to machine guns, destructive devices, and certain other firearms; and

The regulations thereunder, on or before the date prescribed for filing (determined with regard to any extension of time for such filing), there shall be added to the tax required to be shown on the return the amount specified below unless the failure to file the return within the prescribed time is shown to the satisfaction of the district director or the director of the service center to be due to reasonable cause and not to willful neglect. The amount to be added to the tax is 5 percent thereof if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which the failure continues, but not to exceed 25 percent in the aggregate. The amount of any addition under this subparagraph shall be reduced by the amount of the addition under subparagraph (2) of this paragraph for any month to which an addition to tax applies under both subparagraphs (1) and (2) of this paragraph (a).

**(2) Failure to pay tax shown on return.** In case of failure to pay the amount shown as tax on any return (required to be filed after December 31, 1969, without regard to any extension of time for filing thereof) specified in subparagraph (1) of this paragraph (a), on or before the date prescribed for payment of such tax (determined with regard to any extension of time for payment), there shall be added to the tax shown on the return the amount specified below unless the failure to pay the tax within the prescribed time is shown to the satisfaction of the district director, or, as provided in paragraph (a) of this section, the Assistant Regional Commissioner (Alcohol, Tobacco and Firearms), the director of the service center, to be due to reasonable cause and not to willful neglect. Except as provided in paragraph (a)(4) of this section, the amount to be added to the tax is 0.5 percent of the amount of tax shown on the return if the failure is for not more than 1 month, with an additional 0.5 percent for each additional month or fraction thereof during which the failure continues, but not to exceed 25 percent in the aggregate.

WestlawNext © 2013 Thomson Reuters. No claim to original U.S. Government Works. 

**(3) Failure to pay tax not shown on return.** In the case of failure to pay any amount of any tax required to be shown on a return specified in paragraph (a)(1) of this section that is not so shown (including an assessment made pursuant to section 6213(b)) within 21 calendar days from the date of the notice and demand (10 business days if the amount assessed and shown on the notice and demand equals or exceeds $100,000) with respect to any notice and demand made after December 31, 1996, there will be added to the amount stated in the notice and demand the amount specified below unless the failure to pay the tax within the prescribed time is shown to the satisfaction of the district director or the director of the service center to be due to reasonable cause and not to willful neglect. Except as provided in paragraph (a)(4) of this section, the amount to be added to the tax is 0.5 percent of the amount stated in the notice and demand if the failure is for not more than 1 month, with an additional 0.5 percent for each additional month or fraction thereof during which the failure continues, but not to exceed 25 percent in the aggregate. For purposes of this paragraph (a)(3), see § 301.6601–1(f)(5) for the definition of calendar day and business day.

**(4) Reduction of failure to pay penalty during the period an installment agreement is in effect–(i) In general.** In the case of a return filed by an individual on or before the due date for the return (including extensions)--

(A) The amount added to tax for a month or fraction thereof is determined by using 0.25 percent instead of 0.5 percent under paragraph (a)(2) of this section if at any time during the month an installment agreement under section 6159 is in effect for the payment of such tax; and

(B) The amount added to tax for a month or fraction thereof is determined by using 0.25 percent instead of 0.5 percent under paragraph (a)(3) of this section if at any time during the month an installment agreement under section 6159 is in effect for the payment of such tax.

**(ii) Effective date.** This paragraph (a)(4) applies for purposes of determining additions to tax for months beginning after December 31, 1999.

**(b) Month defined. (1)** If the date prescribed for filing the return or paying tax is the last day of a calendar month, each succeeding calendar month or fraction thereof during which the failure to file or pay tax continues shall constitute a month for purposes of section 6651.

(2) If the date prescribed for filing the return or paying tax is a date other than the last day of a calendar month, the period which terminates with the date numerically corresponding thereto in the succeeding calendar month and each such successive period shall constitute a month for purposes of section 6651. If, in the month of February, there is no date corresponding to the date prescribed for filing the return or paying tax, the period from such date in January through the last day of February shall constitute a month for purposes of section 6651. Thus, if a return is due on January 30, the first month shall end on February 28 (or 29 if a leap year), and the succeeding months shall end on March 30, April 30, etc.

(3) If a return is not timely filed or tax is not timely paid, the fact that the date prescribed for filing the return or paying tax, or the corresponding date in any succeeding calendar month, falls on a Saturday, Sunday, or a legal holiday is immaterial in determining the number of months for which the addition to the tax under section 6651 applies.

WestlawNext © 2013 Thomson Reuters. No claim to original U.S. Government Works.

**(c) Showing of reasonable cause. (1)** Except as provided in subparagraphs (3) and (4) of this paragraph (b),[1] a taxpayer who wishes to avoid the addition to the tax for failure to file a tax return or pay tax must make an affirmative showing of all facts alleged as a reasonable cause for his failure to file such return or pay such tax on time in the form of a written statement containing a declaration that it is made under penalties of perjury. Such statement should be filed with the district director or the director of the service center with whom the return is required to be filed; *Provided,* That where special tax returns of liquor dealers are delivered to an alcohol, tobacco and firearms officer working under the supervision of the Regional Director, Bureau of Alcohol, Tobacco and Firearms, such statement may be delivered with the return. If the district director, the director of the service center, or, where applicable, the Regional Director, Bureau of Alcohol, Tobacco and Firearms, determines that the delinquency was due to a reasonable cause and not to willful neglect, the addition to the tax will not be assessed. If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause. A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship (as described in § 1.6161–1(b) of this chapter) if he paid on the due date. In determining whether the taxpayer was unable to pay the tax in spite of the exercise of ordinary business care and prudence in providing for payment of his tax liability, consideration will be given to all the facts and circumstances of the taxpayer's financial situation, including the amount and nature of the taxpayer's expenditures in light of the income (or other amounts) he could, at the time of such expenditures, reasonably expect to receive prior to the date prescribed for the payment of the tax. Thus, for example, a taxpayer who incurs lavish or extravagant living expenses in an amount such that the remainder of his assets and anticipated income will be insufficient to pay his tax, has not exercised ordinary business care and prudence in providing for the payment of his tax liability. Further, a taxpayer who invests funds in speculative or illiquid assets has not exercised ordinary business care and prudence in providing for the payment of his tax liability unless, at the time of the investment, the remainder of the taxpayer's assets and estimated income will be sufficient to pay his tax or it can be reasonably foreseen that the speculative or illiquid investment made by the taxpayer can be utilized (by sale or as security for a loan) to realize sufficient funds to satisfy the tax liability. A taxpayer will be considered to have exercised ordinary business care and prudence if he made reasonable efforts to conserve sufficient assets in marketable form to satisfy his tax liability and nevertheless was unable to pay all or a portion of the tax when it became due.

**(2)** In determining if the taxpayer exercised ordinary business care and prudence in providing for the payment of his tax liability, consideration will be given to the nature of the tax which the taxpayer has failed to pay. Thus, for example, facts and circumstances which, because of the taxpayer's efforts to conserve assets in marketable form, may constitute reasonable cause for nonpayment of income taxes may not constitute reasonable cause for failure to pay over taxes described in section 7501 that are collected or withheld from any other person.

**(3)** If, for a taxable year ending on or after December 31, 1995, an individual taxpayer satisfies the requirement of § 1.6081–4(a) of this chapter (relating to automatic extension of time for filing an individual income tax return), reasonable cause will be presumed, for the period of the extension of time to file, with respect to any underpayment of tax if--

**(i)** The excess of the amount of tax shown on the individual income tax return over the amount of tax paid on or before the regular due date of the return (by virtue of tax withheld by the employer, estimated tax payments, and any payment with an application for extension of time to file pursuant to § 1.6081–4 of this chapter) is no greater than 10 percent of the amount of tax shown on the individual income tax return; and

**(ii)** Any balance due shown on the individual income tax return is remitted with the return.

WestlawNext © 2013 Thomson Reuters. No claim to original U.S. Government Works. 

**(4)** If, for a taxable year ending on or after December 31, 1972, a corporate taxpayer satisfies the requirements of § 1.6081–3(a) (relating to an automatic extension of time for filing a corporation income tax return), reasonable cause shall be presumed, for the period of the extension of time to file, with respect to any underpayment of tax if–

**(i)** The amount of tax (determined without regard to any prepayment thereof) shown on Form 7004, or the amount of tax paid on or before the regular due date of the return, is at least 90 percent of the amount of tax shown on the taxpayer's Form 1120, and

**(ii)** Any balance due shown on the Form 1120 is paid on, or before the due date of the return, including any extensions of time for filing.

**(d) Penalty imposed on net amount due–(1) Credits against the tax.** The amount of tax required to be shown on the return for purposes of section 6651(a)(1) and the amount shown as tax on the return for purposes of section 6651(a)(2) shall be reduced by the amount of any part of the tax which is paid on or before the date prescribed for payment of the tax and by the amount of any credit against the tax which may be claimed on the return.

**(2) Partial payments. (i)** The amount of tax required to be shown on the return for purposes of section 6651(a)(2) shall, for the purpose of computing the addition for any month, be reduced by the amount of any part of the tax which is paid after the date prescribed for payment and on or before the first day of such month.

**(ii)** The amount of tax stated in the notice and demand for purposes of section 6651(a)(3) shall, for the purpose of computing the addition for any month, be reduced by the amount of any part of the tax which is paid before the first day of such month.

**(e) No addition to tax if fraud penalty assessed.** No addition to the tax under section 6651 shall be assessed with respect to an underpayment of tax if a 50–percent addition to the tax for fraud is assessed with respect to the same underpayment under section 6653(b). See section 6653(d).

**(f) Examples.** The provisions of this section may be illustrated by the following examples:

**Example 1.** (a) Under section 6072(a), income tax returns of individuals on a calendar year basis must be filed on or before the 15th day of April following the close of the calendar year. Assume an individual filed his income tax return for the calendar year 1969 on July 20, 1970, and the failure to file on or before the prescribed date is not due to reasonable cause. The tax shown on the return is $800 and a deficiency of $200 is subsequently assessed, making the tax required to be shown on the return, $1,000. Of this amount, $300 has been paid by withholding from wages and $400 has been paid as estimated tax. The balance due as shown on the return of $100 ($800 shown as tax on the return less $700 previously paid) is paid on August 21, 1970. The failure to pay on or before the prescribed date is not due to reasonable cause. There will be imposed, in addition to interest, an additional amount under section 6651(a)(2) of $2.50, which is 2.5 percent (2% for the 4 months from April 16 through August 15, and 0.5% for the fractional part of the month from August 16 through August 21) of the net amount due as shown on the return of $100 ($800 shown on the return less $700 paid on or before April 15). There will also be imposed an additional amount under section 6651(a)(1) of $58, determined as follows:

| | |
|---|---|
| 20 percent (5% per month for the 3 months from April 16 through July 15 and 5% for the fractional part of the month from July 16 through July 20) of the net amount due of $300 ($1,000 required to be shown on the return less $700 paid on or before April 15)........................................ | $60 |
| Reduced by the amount of the addition imposed under section 6651(a)(2) for those months........... | 2 |
| Addition to tax under section 6651(a)(1)........................................................................................ | $50 |

(b) A notice and demand for the $200 deficiency is issued on January 8, 1971, but the taxpayer does not pay the deficiency until December 23, 1971. In addition to interest there will be imposed an additional amount under section 6651(a)(3) of $10, determined as follows:

| | |
|---|---|
| Addition computed without regard to limitation: | |
| 6 percent (5 ½ % for the 11 months from January 19, 1971, through December 18, 1971, and 0.5% for the fractional part of the month from December 19 through December 23) of the amount stated in the notice and demand ($200).............................................................................................. | $12 |
| Limitation on addition: | |
| 25 percent of the amount stated in the notice and demand ($200)................................................ | $50 |
| Reduced by the part of the addition under section 6651(a)(1) for failure to file attributable to the $200 deficiency (20% of $200)............................................................................................................ | $40 |
| Maximum amount of the addition under section 6651(a)(3)............................................................ | $10 |

**Example 2.** An individual files his income tax return for the calendar year 1969 on December 2, 1970, and such delinquency is not due to reasonable cause. The balance due, as shown on the return, of $500 is paid when the return is filed on December 2, 1970. In addition to interest and the addition for failure to pay under section 6651(a)(2) of $20 (8 months at 0.5% per month, 4%), there will also be imposed an additional amount under section 6651(a)(1) of $112.50, determined as follows:

| | |
|---|---|
| Penalty at 5 percent for maximum of 5 months, 25 percent of $500............................................... | $125.00 |
| Less reduction for the amount of the addition under section 6651(a)(2): | |
| Amount imposed under section 6651(a)(2) for the months in which there is also an addition for failure to file--2 ½ percent for the 5 months April 16 through September 15 of the net amount due ($500)...................................................................................................................................... | 12.50 |
| Addition to tax under section 6651(a)(1)......................................................................................... | $112.50 |

**(g) Treatment of returns prepared by the Secretary--(1) In general.** A return prepared by the Secretary under section 6020(b) will be disregarded for purposes of determining the amount of the addition to tax for failure to file any return pursuant to paragraph (a)(1) of this section. However, the return prepared by the Secretary will be treated as a return filed by the taxpayer for purposes of determining the amount of the addition to tax for failure to pay the tax shown on any return and for failure to pay the tax required to be shown on a return that is not so shown pursuant to paragraphs (a)(2) and (3) of this section, respectively.

**(2) Effective date.** This paragraph (g) applies to returns the due date for which (determined without regard to extensions) is after July 30, 1996.

Code of Federal Regulations
Title 26. Internal Revenue
Chapter I. Internal Revenue Service, Department of the Treasury
Subchapter B. Estate and Gift Taxes
Part 20. Estate Tax; Estates of Decedents Dying After August 16, 1954 (Refs & Annos)
Estates of Citizens or Residents
Taxable Estate

26 C.F.R. § 20.2056A–1, Treas. Reg. § 20.2056A–1

§ 20.2056A–1 Restrictions on allowance of marital deduction if surviving spouse is not a United States citizen.

Currentness

**(a) General rule.** Subject to the special rules provided in section 7815(d)(14) of the Omnibus Budget Reconciliation Act of 1989 (Pub.L. 101–239; 103 Stat. 2106), in the case of a decedent dying after November 10, 1988, the federal estate tax marital deduction is not allowed for property passing to or for the benefit of a surviving spouse who is not a United States citizen at the date of the decedent's death (whether or not the surviving spouse is a resident of the United States) unless--

**(1)** The property passes from the decedent to (or pursuant to)--

**(i)** A qualified domestic trust (QDOT) described in section 2056A and § 20.2056A–2;

**(ii)** A trust that, although not meeting all of the requirements for a QDOT, is reformed after the decedent's death to meet the requirements of a QDOT (see § 20.2056A–4(a));

**(iii)** The surviving spouse not in trust (e.g., by outright bequest or devise, by operation of law, or pursuant to the terms of an annuity or other similar plan or arrangement) and, prior to the date that the estate tax return is filed and on or before the last date prescribed by law that the QDOT election may be made (no more than one year after the time prescribed by law, including extensions, for filing the return), the surviving spouse either actually transfers the property to a QDOT or irrevocably assigns the property to a QDOT (see § 20.2056A–4(b)); or

**(iv)** A plan or other arrangement that would have qualified for the marital deduction but for section 2056(d)(1)(A), and whose payments are not assignable or transferable to a QDOT, if the requirements of § 20.2056A–4(c) are met; and

**(2)** The executor makes a timely QDOT election under § 20.2056A–3.

**(b) Marital deduction allowed if resident spouse becomes citizen.** For purposes of section 2056(d)(1) and paragraph (a) of this section, the surviving spouse is treated as a citizen of the United States at the date of the decedent's death if the requirements of section 2056(d)(4) are satisfied. For purposes of section 2056(d)(4)(A) and notwithstanding § 20.2056A–3(a), a return filed prior to the due date (including extensions) is considered filed on the last date that the return is required to be filed (including extensions), and a late return filed at any time after the due date is considered filed on the date that it is actually filed. A surviving spouse is a resident only if the spouse is a resident under chapter 11 of the Internal Revenue Code. See § 20.0–1(b)(1). The

status of the spouse as a resident under section 7701(b) is not relevant to this determination except to the extent that the income tax residency of the spouse is pertinent in applying § 20.0–1(b)(1).

**(c) Special rules in the case of certain transfers subject to estate and gift tax treaties.** Under section 7815(d)(14) of the Omnibus Budget Reconciliation Act of 1989 (Pub.L. 101–239, 103 Stat. 2106) certain special rules apply in the case of transfers governed by certain estate and gift tax treaties to which the United States is a party. In the case of the estate of, or gift by, an individual who was not a citizen or resident of the United States but was a resident of a foreign country with which the United States has a tax treaty with respect to estate, inheritance, or gift taxes, the amendments made by section 5033 of the Technical and Miscellaneous Revenue Act of 1988 (Pub.L. 100–647, 102 Stat. 3342) do not apply to the extent such amendments would be inconsistent with the provisions of such treaty relating to estate, inheritance, or gift tax marital deductions. Under this rule, the estate may choose either the statutory deduction under section 2056A or the marital deduction allowed under the treaty. Thus, the estate may not avail itself of both the marital deduction under the treaty and the marital deduction under the QDOT provisions of section 2056A and chapter 11 of the Internal Revenue Code with respect to the remainder of the marital property that is not deductible under the treaty.

***Credits***
[T.D. 8612, 60 FR 43539, Aug. 22, 1995]

SOURCE: T.D. 6296, 23 FR 4529, June 24, 1958; 25 FR 14021, Dec. 31, 1960, unless otherwise noted.

AUTHORITY: 26 U.S.C. 7805.; Section 20.2010–0T also issued under 26 U.S.C. 2010(c)(6).; Section 20.2010–1T also issued under 26 U.S.C. 2010(c)(6).; Section 20.2010–2T also issued under 26 U.S.C. 2010(c)(6).; Section 20.2010–3T also issued under 26 U.S.C. 2010(c)(6).; Section 20.2031–7 also issued under 26 U.S.C. 7520(c)(2).; Section 20.2031–7A also issued under 26 U.S.C. 7520(c)(2).; Section 20.6060–1 also issued under 26 U.S.C. 6060(a).; Section 20.6081–1 also issued under 26 U.S.C. 6081(a).; Section 20.6109–1 also issued under 26 U.S.C. 6109(a).; Section 20.6109–2 also issued under 26 U.S.C. 6109(a).; Section 20.6302–1 also issued under 26 U.S.C. 6302(a) and (h).; Section 20.6695–1 also issued under 26 U.S.C. 6695(b).; Section 20.7520–1 also issued under 26 U.S.C. 7520(c)(2).; Section 20.7520–2 also issued under 26 U.S.C. 7520(c)(2).; Section 20.7520–3 also issued under 26 U.S.C. 7520(c)(2).; Section 20.7520–4 also issued under 26 U.S.C. 7520(c)(2).

Notes of Decisions (1)

Current through July 3, 2013; 78 FR 40380.

**End of Document**

© 2013 Thomson Reuters. No claim to original U.S. Government Works.

Code of Federal Regulations
Title 26. Internal Revenue
Chapter I. Internal Revenue Service, Department of the Treasury
Subchapter B. Estate and Gift Taxes
Part 20. Estate Tax; Estates of Decedents Dying After August 16, 1954 (Refs & Annos)
Procedure and Administration

26 C.F.R. § 20.6081–1, Treas. Reg. § 20.6081–1

§ 20.6081–1 Extension of time for filing the return.

Currentness

**(a) Procedures for requesting an extension of time for filing the return.** A request for an extension of time to file the return required by section 6018 must be made by filing Form 4768, "Application for Extension of Time To File a Return and/or Pay U.S. Estate (and Generation–Skipping Transfer) Taxes." Form 4768 must be filed with the Internal Revenue Service office designated in the application's instructions (except as provided in § 301.6091–1(b) of this chapter for hand-carried documents). Form 4768 must include an estimate of the amounts of estate and generation-skipping transfer tax liabilities with respect to the estate.

**(b) Automatic extension.** An estate will be allowed an automatic 6–month extension of time beyond the date prescribed in section 6075(a) to file Form 706, "United States Estate (and Generation–Skipping Transfer) Tax Return," if Form 4768 is filed on or before the due date for filing Form 706 and in accordance with the procedures under paragraph (a) of this section.

**(c) Extension for good cause shown.** In its discretion, the Internal Revenue Service may, upon the showing of good and sufficient cause, grant an extension of time to file the return required by section 6018 in certain situations. Such an extension may be granted to an estate that did not request an automatic extension of time to file Form 706 prior to the due date under paragraph (b) of this section, to an estate or person that is required to file forms other than Form 706, or to an executor who is abroad and is requesting an additional extension of time to file Form 706 beyond the 6–month automatic extension. Unless the executor is abroad, the extension of time may not be for more than 6 months beyond the filing date prescribed in section 6075(a). To obtain such an extension, Form 4768 must be filed in accordance with the procedures under paragraph (a) of this section and must contain a detailed explanation of why it is impossible or impractical to file a reasonably complete return by the due date. Form 4768 should be filed sufficiently early to permit the Internal Revenue Service time to consider the matter and reply before what otherwise would be the due date of the return. Failure to file Form 4768 before that due date may indicate negligence and constitute sufficient cause for denial of the extension. If an estate did not request an automatic extension of time to file Form 706 under paragraph (b) of this section, Form 4768 must also contain an explanation showing good cause for not requesting the automatic extension.

**(d) Filing the return.** A return as complete as possible must be filed before the expiration of the extension period. The return thus filed will be the return required by section 6018(a), and any tax shown on the return will be the amount determined by the executor as the tax referred to in section 6161(a)(2), or the amount shown as the tax by the taxpayer upon the taxpayer's return referred to in section 6211(a)(1)(A). The return cannot be amended after the expiration of the extension period although supplemental information may subsequently be filed that may result in a finally determined tax different from the amount shown as the tax on the return.

WestlawNext © 2013 Thomson Reuters. No claim to original U.S. Government Works. 

**(e) Payment of the tax.** An extension of time for filing a return does not operate to extend the time for payment of the tax. See § 20.6151–1 for the time for payment of the tax, and §§ 20.6161–1 and 20.6163–1 for extensions of time for payment of the tax. If an extension of time to file a return is obtained, but no extension of time for payment of the tax is granted, interest will be due on the tax not paid by the due date and the estate will be subject to all applicable late payment penalties.

**(f) Effective date.** This section applies to estates of decedents dying after August 16, 1954, except for paragraph (b) of this section which applies to estate tax returns due after July 25, 2001.

**Credits**

[T.D. 6296, 23 FR 4529, June 24, 1958, as amended by T.D. 6711, 29 FR 3656, March 24, 1964; T.D. 7238, 37 FR 28722, Dec. 29, 1972; T.D. 7710, 45 FR 50745, July 31, 1980; T.D. 8957, 66 FR 38546, July 25, 2001]

SOURCE: T.D. 6296, 23 FR 4529, June 24, 1958; 25 FR 14021, Dec. 31, 1960, unless otherwise noted.

AUTHORITY: 26 U.S.C. 7805.; Section 20.2010–0T also issued under 26 U.S.C. 2010(c)(6).; Section 20.2010–1T also issued under 26 U.S.C. 2010(c)(6).; Section 20.2010–2T also issued under 26 U.S.C. 2010(c)(6).; Section 20.2010–3T also issued under 26 U.S.C. 2010(c)(6).; Section 20.2031–7 also issued under 26 U.S.C. 7520(c)(2).; Section 20.2031–7A also issued under 26 U.S.C. 7520(c)(2).; Section 20.6060–1 also issued under 26 U.S.C. 6060(a).; Section 20.6081–1 also issued under 26 U.S.C. 6081(a).; Section 20.6109–1 also issued under 26 U.S.C. 6109(a).; Section 20.6109–2 also issued under 26 U.S.C. 6109(a).; Section 20.6302–1 also issued under 26 U.S.C. 6302(a) and (h).; Section 20.6695–1 also issued under 26 U.S.C. 6695(b).; Section 20.7520–1 also issued under 26 U.S.C. 7520(c)(2).; Section 20.7520–2 also issued under 26 U.S.C. 7520(c)(2).; Section 20.7520–3 also issued under 26 U.S.C. 7520(c)(2).; Section 20.7520–4 also issued under 26 U.S.C. 7520(c)(2).

Notes of Decisions (2)

Current through July 3, 2013; 78 FR 40380.

**End of Document**

© 2013 Thomson Reuters. No claim to original U.S. Government Works.

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 8th day of August, 2013, I caused this Corrected Brief of Appellants to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

John A. Nolet
Department of Justice
950 Pennsylvania Avenue, N.W.
Ben Franklin Station
Post Office Box 502
Washington, DC 20530
(202) 514-2935

*Counsel for Appellee*

Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of copies of the Corrected Brief of Appellants will be hand filed at the Office of the Clerk, United States Court of Appeals for the Federal Circuit in accordance with the Federal Circuit Rules.

/s/ Jonathan E. Strouse
*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [ X ] this brief contains [*6,097*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

   [ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: August 8, 2013

/s/ Jonathan E. Strouse
*Counsel for Appellants*